THE STATE OF OHIO, APPELLEE, *v.* INGRAM, APPELLANT.

*John F. Holcomb,* prosecuting attorney, and *Daniel G. Eichel,* for appellee.

*Richard E. Hart,* for appellant.

(No. CA83-09-104—Decided August 6, 1984.)

JONES, J. On April 16, 1983, between the hours of 5:00 and 5:30 p.m., Detective Bobby Sparks of the Monroe Police Department received a telephone call from Detective William Kingston of the Dayton Police Department. Kingston informed Sparks that defendant-appellant, Larry E. Ingram, and one Jimmy Stelts would be in Monroe that evening for the ostensible purpose of committing burglaries in the Monroe area. Kingston also informed Sparks that the duo would be driving a dark brown or maroon 1977 Cadillac owned by Ingram bearing Ohio license plates AKN 969. In addition, Sparks was informed that Ingram had previously been convicted of burglary and that Kingston knew Stelts personally, having arrested him for burglary approximately ten to twelve years earlier. Kingston told Sparks that Ingram and Stelts were capable of performing burglaries and that the two would probably be armed. Kingston explained to Sparks that this information had come from a confidential informant, who, on several occasions in the past, had given reliable information to Kingston. Kingston further informed Sparks that the informant knew of Ingram's and Stelts' activities as a result of personal knowledge.

Upon receiving this information, Sparks contacted several other Monroe police officers and an investigation was commenced. The police discovered that Ingram had been convicted in the early 1970s for a burglary committed in the Brittany Heights neighborhood of Monroe, wherein Ingram had parked his vehicle and traveled on foot into Brittany Heights where the burglary was committed.

The Monroe police initiated a search for the Ingram vehicle, and at approximately 7:30 p.m., they discovered the Cadillac parked on Ohio Avenue just south of State Route 63. The Brittany Heights area is located directly north of the highway, approximately one-half to three-quarters of a mile walking distance from the location on Ohio Avenue where the Cadillac was parked. Several Monroe officers began a surveillance of the subject vehicle. At 9:42 p.m., a burglary was reported at 155 Winston Lane in the Brittany Heights neighborhood. Officers responding to the scene found that several items of jewelry had been taken from the home.

At approximately 10:50 p.m., police watching the vehicle parked on Ohio Avenue observed two men, one carrying an athletic racquetball bag in his hand, approaching the vehicle. The two individuals entered the car, whereupon the police converged on the vehicle, and ordered the individuals out. The two individuals, Ingram and Stelts, alighted from the vehicle and were arrested. The police immediately searched Ingram and Stelts and the passenger compartment of the car, and recovered two loaded

handguns and several jewelry items. Subsequent to the arrest of Ingram and Stelts, three additional burglaries were found to have been committed in the Brittany Heights area.

Ingram was indicted on four counts of aggravated burglary with a firearm specification and one count each of carrying a concealed weapon, possession of criminal tools, receiving stolen property, and having a weapon under disability.

On June 28, 1983, Ingram filed a motion to suppress. The first branch of Ingram's motion sought to suppress the fruits of the search and seizure conducted on Ingram and his automobile. The second part of the motion sought an order dismissing the indictment, claiming that Ingram was subjected to an illegal stop and arrest made without probable cause. The motion came on for hearing on July 8, 1983, and was denied by the trial court.

On July 11, 1983, Ingram pleaded no contest to the four counts of aggravated burglary and the remaining counts of the indictment were dismissed. Ingram was found guilty on all four counts of aggravated burglary contrary to R.C. 2911.11(A)(3) and was duly sentenced by the trial court.

Ingram filed a timely notice of appeal, and as his first assignment of error asserts the following:

"The trial court erred to the prejudice of the defendant-appellant in overruling his motion to suppress the fruits of the search and seizure for the reason that they were the fruits of an illegal arrest and seizure in violation of the United States Constitution."

Appellant contends that the failure of law enforcement officials to obtain a warrant and the lack of any exigent circumstances which would justify a warrantless arrest or search renders appellant's arrest and the subsequent search of his person and automobile invalid. Appellant claims that there was ample time in which police could obtain a warrant inasmuch as appellant's car was discovered at 7:30 p.m. but it was not until three hours later that appellant was arrested.

Cases construing the Fourth Amendment have held that a police officer is permitted to make a warrantless arrest for a felony not committed in his presence if there were reasonable grounds for making the arrest. *United States* v. *Watson* (1976), 423 U.S. 411; *United States* v. *Santana* (1976), 427 U.S. 38. An arrest without a warrant is permitted where there are reasonable grounds to believe that the person to be arrested has committed a felony. Thus, the question becomes one of whether there was probable cause for making the arrest. See *Henry* v. *United States* (1959), 361 U.S. 98. "The necessary inquiry, therefore, [is] not whether there was a warrant or *whether there was time to get one,* but whether there was probable cause for the arrest." (Emphasis added.) *Watson, supra,* at 417. Accordingly, if probable cause exists, an arresting officer is not required to obtain a warrant in order to apprehend a suspected felon in a public place. *Steagald* v. *United States* (1981), 451 U.S. 204; see, also, *State* v. *Timson* (1974), 38 Ohio St. 2d 122 [67 O.O.2d 140]; *State* v. *Allen* (1981), 2 Ohio App. 3d 441.

The probable cause needed to make a warrantless arrest constitutionally valid requires that the arresting officer, at the moment of the arrest, have sufficient information, based on the facts and circumstances within his knowledge or derived from a reasonably trustworthy source, to warrant a prudent man in believing that an offense had been committed by the accused. *Beck* v. *Ohio* (1964), 379 U.S. 89. See, also, *Gerstein* v. *Pugh* (1975), 420 U.S. 103; *State* v. *Calhoun* (1981), 2 Ohio App. 3d 472; *State* v. *Wilson* (1978), 57 Ohio App. 2d 11 [11 O.O.3d 8]. We are therefore required to determine whether there was probable cause, in terms of the existence

of sufficient information to warrant a prudent individual in believing that a felony had been committed by appellant, in order to evaluate the constitutional validity of appellant's arrest and the search conducted subsequent thereto.

Since appellant's arrest was, for the most part, based on information received from an informant, our analysis will focus on probable cause as it relates to information and tips received from informants. In *Illinois* v. *Gates* (1983), 462 U.S. 213, the Supreme Court redefined the standards to be used in determining the existence of probable cause based on an informant's tip. The court stated that while an informant's veracity, reliability and basis of knowledge are all highly relevant in determining the value of his report, these elements should be understood simply as closely intertwined issues which may illuminate the common sense practical question of whether probable cause exists, rather than being the actual standards in and of themselves of determining whether an informant's report is sufficient to establish probable cause. The court noted that probable cause deals with probabilities — the factual and practical nontechnical considerations of everyday life on which reasonable and prudent men act — and is a fluid concept, to be based on the totality of the circumstances, and not reduced to a neat set of legal rules. *Gates, supra,* at 232-233. Thus, the veracity or reliability of an informant and his basis of knowledge are better understood as relevant considerations in the totality of circumstances analysis that has traditionally guided probable cause determinations.

We note that *Gates, supra,* dealt with a warrant which was issued by a magistrate, and is therefore distinguishable from the case at bar on that basis inasmuch as the case at bar involves a warrantless arrest and search. However, since the standards applicable to an officer's probable cause assessment at the time of a challenged arrest or search are as stringent as the standards applied with respect to a magistrate's assessment, we feel that the ruling in *Gates, supra,* dealing with the evaluation of an informant's tip, is equally applicable to a scenario such as the one presented in the case at bar. See *Whiteley* v. *Warden* (1971), 401 U.S. 560.

In the case at bar, the investigation of and subsequent apprehension of appellant by the Monroe police primarily resulted from the information given to the Monroe police by an anonymous informant by way of Officer Kingston of the Dayton Police Department. At the hearing on appellant's motion to suppress, Kingston testified that this particular informant had given Kingston information on previous occasions and had proved himself to be a reliable source of information. Furthermore, Kingston stated that the informant had indicated that the information relating to appellant was based upon the informant's personal knowledge. The Monroe police discovered appellant's Cadillac parked near the Brittany Heights area, thereby corroborating and confirming that portion of the informant's tip which indicated that appellant would be in the Monroe area driving the vehicle which the police discovered on Ohio Avenue. In addition, an investigation by the Monroe police revealed appellant's earlier conviction for a burglary committed in the Brittany Heights area utilizing a *modus operandi* similar to that here. Finally, a burglary in the Brittany Heights neighborhood was reported at 9:42 p.m., thereby confirming the fact that someone was indeed in that area of Monroe for the purpose of committing a burglary.

The informant, having provided Kingston with reliable information in the past, and by providing information on appellant which was based on the informant's personal knowledge, has suf-

ficiently demonstrated his veracity and reliability as well as providing the source and basis for such information. In our view, these factors, when considered in conjunction with the independent investigation of the police which corroborated the informant's report, reflects sufficient information which a reasonable and a prudent individual could rely upon in believing that a felony had been committed by those individuals who entered the Cadillac parked on Ohio Avenue at 10:50 p.m. on the evening of April 16, 1983. Thus, we find that under the totality of the circumstances in the case at bar, there was sufficient probable cause to validate the warrantless arrest of appellant and his companion. * * *■

For these reasons, we find the first assignment of error to be without merit and hereby overrule the same. * * *

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., and KOEHLER, J., concur.