THE STATE OF OHIO *v.* CAVANAUGH.

(No. 87 CRB 8556—Decided February 24, 1988.)

Akron Municipal Court.

*Michael Jones,* assistant city prosecutor, for the state.

*R. Douglas Paige,* for defendant.

WILLIAMS, J. This case is before the court on defendant's motion to suppress filed November 30, 1987. A hearing was held on the motion. Defendant filed a memorandum of law on the motion to suppress on December 23, 1987. The state of Ohio filed a response to defendant's memorandum of law on the motion to suppress on January 19, 1988.

In the motion before the court:

"Defendant moves this Honorable Court for an order suppressing any and all evidence of drugs in the within case inasmuch as all such evidence was obtained illegally without a search warrant or any other legal justification by law enforcement officers."

Findings of Fact

On August 17, 1987, at 7:00 p.m., Officer Zampelli of the Akron Police Department ("APD") was on patrol on West Market Street near Main Street. He received a call from Family Restaurant which was in the area. The call informed him that there were two suspicious people, a man and a woman, in the area. The woman kept coming into the foyer of the restaurant and then leaving. Zampelli arrived on the scene. The defendant, David Cavanaugh, and the woman walked back into the foyer area.

Zampelli approached them and asked them for identification which they produced. The young woman's name was Lisa Folk. Zampelli asked them to fill out interview cards, and they began to do so. They told Zampelli that they had wanted to use the phone at the West Bar which was next door to the restaurant, but it wasn't working. Zampelli suggested to them that if they weren't going to do any business at the restaurant they should leave.

Meanwhile Officer Buford of the APD was having dinner and heard the signal that Zampelli was putting out.

He arrived on the scene. Zampelli was talking with defendant and Folk.

Very soon after Buford arrived the defendant and Folk left and walked around the corner. Folk came back. She told the officers that defendant and a black male, Daniel Gurley, whom Lisa Folk knew, were dealing drugs at the West Bar and defendant had drugs on him.

Zampelli called the Narcotics Division of the APD for advice as to what to do. Zampelli and Buford felt the Narcotics Division had experience which they needed in looking for drugs. Zampelli told Officer Barclay of the Narcotics Division that a drug deal might be occurring right on the scene. Barclay replied that he could not come that second but would get there. Barclay told Zampelli that they had sufficient cause to detain the defendant and Gurley. The officers walked over to the West Bar. Gurley and defendant were talking right outside the door. When Gurley saw Zampelli, he started to walk eastbound on Market Street. The officers stopped the two men and gave them a "pat down" type search for weapons. They found no weapons.

Barclay arrived on the scene. Barclay talked with Folk before the search of the two men. She told him defendant had cocaine on him and had just been selling drugs in the area. Barclay then searched the defendant. He found several pills in defendant's watch pocket. The pills were confiscated. Several of the pills tested negative for drugs. The remainder tested positive for drugs. Defendant was charged with possession of Phentermine.

None of the three officers knew Folk personally. Folk had known defendant previously for about three years. She had previously filed a complaint against the defendant for abduction. The case was dismissed, however.

She had had contact with another detective of the APD in June and July 1987 on other matters. She had never previously provided information about drugs to anyone. She had been questioned about some criminal activity in the two months referred to above.

### Conclusions of Law and Discussion

The defendant in his memorandum of law discusses the two-pronged *Aguilar-Spinelli* test for determining the sufficiency of probable cause for the issuance of a search warrant by a magistrate based upon information from informants. The two United States Supreme Court cases referred to are *Aguilar* v. *Texas* (1964), 378 U.S. 108, and *Spinelli* v. *United States* (1969), 393 U.S. 410. The Supreme Court said in *Aguilar* at 114-115, that:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, * * * the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was 'credible' or his information 'reliable.' Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' * * * or, as in this case, by an unidentified informant."

*Spinelli* v. *United States* elaborated on the *Aguilar* test and applied it to the case before it. A good explanation of the test is found in LaFave & Israel, Criminal Procedure (1984) 192, Section 3.3(c):

"Under the first or 'basis of knowledge' prong, facts had to be revealed which permitted the judicial officer making the probable cause determination to reach a judgment as to whether the informant had a basis for his allegations that a certain person had been, was or would be involved in criminal conduct or that evidence of crime would be found at a certain place. By contrast, under the second or 'veracity' prong of *Aguilar*, sufficient facts had to be brought before the judicial officer so that he could determine either the inherent credibility of the informant or the reliability of his information on this particular occasion."

This court notes that the case before it involves a warrantless search which is sought to be justified by the well-recognized "probable cause plus exigent circumstances exception" to the search warrant requirement. But as explained in 1 Ringel, Searches & Seizures, Arrests and Confessions (1987) 4-2, Section 4.1:

"With or without a warrant, the quantum of proof necessary to establish probable cause for a search is the same."

The United States Supreme Court has noted that:

"* * * [I]n a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *United States* v. *Ventresca* (1965), 380 U.S. 102, 106.

It is also to be noted that:

"Only rarely need the search of a person be justified by exigent circumstances, since probable cause to search a person will almost always be accompanied by probable cause to arrest as well." Ringel, *supra,* at 10-10, Section 10.4.

The *Aguilar* test has been applied by the court to determine whether the police had probable cause to search without a warrant in *McCray* v. *Illinois* (1967), 386 U.S. 300.

In *Illinois* v. *Gates* (1983), 462 U.S. 213, the United States Supreme Court redefined the test for determining the existence of probable cause based on an informant's tip. The court stated its intent as follows:

"* * * to abandon the 'two-pronged test' established by our decisions in *Aguilar* and *Spinelli*. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. * * * The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed. * * * We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*." *Id.* at 238-239.

In a leading Ohio case, *State* v. *Ingram* (1984), 20 Ohio App. 3d 55, 20 OBR 58, 484 N.E. 2d 227, the Butler County Court of Appeals explained the *Gates* test. That court stated in explaining *Gates*:

"* * * [P]robable cause deals with probabilities — the factual and practical nontechnical considerations of everyday life on which reasonable and prudent men act — and is a fluid concept, to be based on the totality of the circumstances, and not reduced to a neat set of legal rules. * * * Thus, the veracity or reliability of an informant and his basis of knowledge are better understood as relevant considerations in the totality of circumstances analysis that has traditionally guided probable cause determinations." *Id.* at 58, 20 OBR at 61, 484 N.E. 2d at 230.

Also, consistent with the two above statements from Ringel, the court of appeals in *Ingram* held that the *Gates* test was to be applied to all cases where the existence of probable cause is to be determined on the basis of an informant's tip, whether the issue is arrest, with or without a warrant, or a search, with or without a warrant.

This court wishes to note parenthetically that a state could impose more stringent standards for finding probable cause than are imposed by *Gates* as a matter of state law. Massachusetts and Washington have not followed *Gates*. But Ohio courts are following *Gates*. See *Ingram* and a host of unreported cases.

In the case before the court we are faced with deciding whether Folk was an informant or a victim or witness. Some authorities refer to a victim or witness as a "citizen informant" as opposed to a "criminal," "paid" or "professional" informant. Realizing that labels are not determinative, this court will refer to the victim or witness as a "citizen informant" and the latter type of informant simply as an "informant." For apparent reasons defendant desires that Folk be characterized as an informant while the state desires that she be determined to be a citizen informant. The *Gates* case is applicable regardless of which determination is made.

It is also noted that the United States Supreme Court has not had to decide many cases regarding the citizen informant, nor is there much Ohio reported authority on citizen informants. This court finds that Folk was a citizen informant. Although Folk may have been a victim of the defendant at some time in the past, this does

not necessarily require that she be treated as an informant. It was so held for example in *United States* v. *Lewis* (C.A. 8, 1984), 738 F. 2d 916, where a private citizen who had been victimized by the defendant was enlisted by law enforcement officers to make contact with the defendant and gather information about him. The information thus gathered was the basis of probable cause. The Court of Appeals for the Eighth Circuit held that the victim was a citizen informant and was not transformed into a professional informant whose credibility must be shown.

It is now a general principle of search and seizure law that:

"* * * [V]eracity may be assumed when information comes from the victim of or a witness to criminal activity. Lower courts have consistently taken that position * * *." LaFave & Israel, *supra,* at 204, Section 3.3(d). (This only refers to an identified victim or witness.)

It is to be noted, however, that Folk's conduct at the arrest scene was a situation where *technically* a citizen informant was involved, but:

"* * * [T]he nature of the criminal conduct alleged and the relationship of the 'citizen' to that activity is more typical of that found when informants from the criminal milieu are utilized." LaFave & Israel, *supra,* at 204, fn. 129, Section 3.3(d).

In these circumstances there should be at least some skepticism of the veracity of the citizen informant. See *People* v. *Herndon* (1974), 42 Cal. App. 3d 300, 116 Cal. Rptr. 641. Similarly, in *United States* v. *Button* (C.A. 8, 1981), 653 F. 2d 319, the United States Court of Appeals held that in a case involving probable cause based on an observation of narcotics a more particular showing of the law-abiding nature of the informant was needed than the affiant's statement that he knew the informant to be "an outstanding member of the community." This, the court explained at 326, is required because:

" [']* * * as a general proposition it is an informant from the criminal milieu rather than a law-abiding citizen who is most likely to be present under such circumstances. * * *['] "

There is nothing in the case before the court to provide additional reliability or credibility.

The case of *State* v. *Northness* (1978), 20 Wash. App. 551, 582 P. 2d 546, indicates the prevailing view that suspicious circumstances involving a citizen informant can *generally* be overcome by sufficiently detailed information. That case involved a female informant whose female roommate also had a man residing with her. The informant's affidavit was based on personal observation of marijuana in her own apartment. The court commented at 558, 582 P. 2d at 550:

"* * * [W]e are not unmindful of the possibility that Melissa Tennant may have been motivated by self interest, *i.e.,* a desire to exculpate herself from criminal liability as co-possessor of the premises wherein the marijuana was kept. However, the fact that an identified eyewitness informant may also be under suspicion — in this case because of her initial contact — has been held not to vitiate the inference of reliability raised by the detailed nature of the information and the disclosure of the informant's identity."

We have no such detailed information from Folk in the case *sub judice.* Even more important is the fact that there was no "basis of knowledge" problem in *Northness.* The citizen informant told the affiant in that case, a sheriff's deputy, that:

"* * * while she was putting some clothing in a hope chest, that was in one of the bedrooms in the apartment, after doing the laundry, *she observed*

*what she recognized to be marijuana,* in processed form, in the hope chest. She related that she estimated the amount to be approximately two pounds. *She indicated to me that she is familiar with marijuana and did recognize the substance in the chest to be marijuana.*" (First emphasis *sic;* second emphasis added.)

We are not mechanistically applying a two-prong test, but were it so being applied the state would fail the first prong. We are applying a "totality of the circumstances" approach. There is a problem regarding Folk's veracity, and she has provided no detailed information about defendant's alleged drug dealing and drug possession to help overcome this problem. Certainly there is nothing so persuasive about her veracity to overcome weakness in her "basis of knowledge," as will be apparent as that concept will be examined herein.

More extensive questioning of Folk on the scene might have provided the type of detailed, specific information including some basis of knowledge about drugs and drug dealing. But the conclusory statements of Folk are inadequate to provide additional credibility to a somewhat suspect citizen informant or a basis of knowledge about drugs and drug dealing.

The "basis of knowledge" prong of the now-abandoned *Aguilar-Spinelli* test is still "highly relevant" under the *Gates* standard. It is true, as recognized by the authorities based on many cases, that finding a "basis of knowledge" "is generally not a major problem as to the so-called citizen-informer." LaFave & Israel, *supra,* at 205, Section 3.3(d).

As similarly stated in Ringel, *supra,* at 4-43, Section 4.3(a)(1):

"Establishing a basis of knowledge is usually not a problem with the citizen witness or victim of crime."

There is one major exception, however, identified by the same authorities and supported by many cases. As stated in LaFave & Israel, *supra,* at 205, Section 3.3(d):

"* * * [S]ome explanation regarding the basis of knowledge of the victim or witness is clearly called for when it appears the purported knowledge could have been obtained only by the utilization of some expertise beyond that of the typical layman."

And in Ringel, *supra,* at 4-44, Section 4.3(a)(1):

"If, however, expertise is required beyond the capabilities of the ordinary citizen, a foundation for such expertise must be presented to the court."

For our purposes, "presented to the court" means "presented to the officers on the scene."

For example, in *Button* there was no basis of knowledge established to show how the citizen informant or his source knew that a white powder was "Angel Dust." Therefore, the court found no probable cause existed. In *United States* v. *Pond* (C.A. 2, 1975), 523 F. 2d 210 certiorari denied (1976), 423 U.S. 1058, the citizen informant was a stationmaster who had an acute sense of smell and had accurately detected marijuana in over forty cases leading to seventy arrests. He was in the court's words "an experienced smeller of marijuana." *Id.* at 212. He was also close enough to the suitcase containing the plastic bags for a man with his acute sense of smell to have so detected the marijuana. Likewise, in *People* v. *Paris* (1975), 48 Cal. App. 3d 766, 122 Cal. Rptr. 272, a search for marijuana seen by a telephone installer was held to be legal, but only because the installer was a reserve police officer who had been given in that capacity training to recognize marijuana.

*People* v. *Pate* (Colo. 1985), 705 P. 2d 519, involved a search for cocaine based on information provided by a

citizen informant. The information was elaborate and thorough:

"* * * [Citizen informant] Howell provided detailed information which far surpassed speculation or conjecture. Specifically, he told the officer that earlier in the evening he had been "partying" with the two women and that they had been "snorting" cocaine. He then indicated that the defendant kept cocaine in her checkbook in her purse. Howell was then asked how he knew that it was in there. He stated that during the evening the defendant had misplaced her checkbook and had become frantic because she said that there was cocaine in it. Howell said that after she found her checkbook she looked under the plastic flap inside, where the balance book or the checks are held in place, and expressed relief that the cocaine was still there. She then put the checkbook into her purse. *When asked how he knew the substance was cocaine, Howell indicated that he had previously used cocaine.* When asked where the checkbook was located, Howell said that he had seen the defendant place it in her purse and that, when he had gotten out of her car, the checkbook was either in her purse or on the console. Further, the defendant and Howell had some contact earlier in the evening, as was evident from Howell's desire to file a complaint against her because of the traffic altercation in Longmont." (Emphasis added.)

The court concluded:

"Thus, when the defendant emerged from her car with purse in hand, Officer Bontz had probable cause to arrest the defendant." *Id.*

It is interesting to note that three judges dissented because they held that there was no probable cause. They found no weakness in Howell's basis of knowledge, but concluded that Howell was not to be classified as a citizen informant because of his motives. His motives were self-interest and a desire to get defendant in trouble (there had been a traffic altercation involving Howell and defendant earlier in the evening).

Considering the totality of the circumstances, this court finds that there was no probable cause for the search of the defendant and the seizure of the pills found on his person. As has been discussed at length, the veracity of Folk, despite her status as a citizen informant, is somewhat suspect.

It was in her interest to cast suspicion on defendant's activity to remove suspicion from herself. The situation she found herself in was similar to that of the paid informant from the criminal milieu. She provided no details about the alleged criminal activity in the West Bar.

A more serious problem is the weakness in the basis of knowledge for Folk's statements regarding defendant's alleged drug dealing and cocaine or drug possession. Folk was not shown to be able to identify any drugs or drug dealing techniques by reason of her personal expertise. She made conclusory statements for which there was no corroboration. The initial pat down of defendant yielded no evidence of weapons or drugs.

The court finds that there was no probable cause for the warrantless search of defendant.

The defendant's motion to suppress filed November 30, 1987, is granted.

It is ordered that all evidence regarding drugs and the finding of drugs on defendant, including physical evidence, documents, and testimony, be suppressed and not introduced in any trial of this case.

*Motion to suppress granted.*