THE STATE OF OHIO, APPELLANT, v. PALADIN ET AL., APPELLEES.

(Nos. 12-135 and 12-139—Decided
May 2, 1988.)

*John E. Shoop,* prosecuting attorney, and *John Hawkins,* for appellant.
*Albert L. Purola,* for appellees.

CHRISTLEY, J.    Plaintiff-appellant, the state of Ohio, filed two separate appeals which were consolidated on April 29, 1987. Defendants-appellees, Richard A. and Sally J. Paladin, are husband and wife. Both cases involve the same facts and are discussed together herein.

On July 2, 1986, the Eastlake Police Department received information about a burglary which had occurred in October 1985. The information came from Donald Moran who was already in jail for a separate offense. A second informant, Jimmy Tomsik, confirmed Moran's story. Both informants said they had been involved in the burglary. Police detectives followed up on the information and their investigation uncovered items from the burglary. The items were a bag of jewelry from the Chagrin River and the receipt for a camera from a Painesville pawn shop. Believing they had sufficient probable cause, police officers, without warrants, first arrested appellee Sally Paladin and then appellee Richard Paladin on July 3, 1986. Incriminating statements were then obtained from each defendant.

On September 19, 1986, the Lake County Grand Jury indicted appellees on complicity to commit aggravated burglary. On November 4, 1986, appellees moved to suppress all of the statements made and evidence obtained as a result of the arrests.

On January 30, 1987, Lake County Common Pleas Court Judge James W. Jackson granted the motion of Sally Paladin, finding that:

"Consideration of the testimony substantiates both Fourth and Fifth Amendment violations accompanied the warrantless arrest absent probable cause on July 3, 1986, and the nonvoluntary waiver executed by defendant Paladin thereafter."

On February 3, 1987, in compliance with Crim. R. 12(J), appellant filed a notice of appeal from this order.

On February 4, 1987, Lake County Common Pleas Court Judge Martin O. Parks granted the motion of Richard Paladin, finding that:

"* * * [T]he testimony and constitutional decisions applicable support defendant's argument that said statement was illegally begotten and in contravention to the Fourth and Fifth Amendments to the United States Constitution and ought to be suppressed."

On February 10, 1987, appellant filed a notice of appeal from this order in compliance with Crim. R. 12(J).

On May 7, 1987, appellees filed in this court a motion to affirm the final orders of the common pleas court. On May 18, 1987, appellant filed a motion to strike appellees' motion to affirm. This court overruled appellees' motion to affirm and appellant's motion to strike on June 16, 1987.

The following assignment of error has been filed in each case:

"The trial court erred in granting appellee's motion to suppress since probable cause existed for the police to make a warrantless arrest."

Since both appeals are based on the same assignment of error and are buttressed and refuted by identical arguments, they are discussed together herein. Appellant's assignment of error is not well-taken.

Appellant argues that the police had probable cause to make a warrantless arrest. Both trial judges

disagreed and each cited *Illinois* v. *Gates* (1983), 462 U.S. 213, in support of their findings. *Gates* held that the "totality of the circumstances" is the proper standard for determining probable cause in cases involving informants. *Gates* involved the issuance of a search warrant based in part on an informant's anonymous letter.

Appellant cites *State* v. *Ingram* (1984), 20 Ohio App. 3d 55, 20 OBR 58, 484 N.E. 2d 227, which followed the *Gates* ruling. *Ingram,* as in the case at bar, involved a warrantless arrest pursuant to an informant's tip. The *Ingram* court affirmed the trial court's denial of the motion to suppress and held in part:

"The informant, *having provided* * * * *reliable information in the past,* and by providing information on appellant, which was based on the informant's personal knowledge, has sufficiently demonstrated his veracity and reliability as well as providing the source and basis for such information. In our view, these factors, when considered in conjunction with the independent investigation of the police which corroborated the informant's report, reflect sufficient information which a reasonable and a prudent individual could rely upon in believing that a felony had been committed * * *." (Emphasis added.) *Id.* at 58-59, 20 OBR at 62, 484 N.E. 2d at 231.

In the case at bar, as in *Ingram,* there was: (1) an informant who had provided reliable information in the past; and (2) information based on the informant's personal knowledge. However, in the instant case, an independent investigation by the police only corroborated the informants' involvement in the robbery. It did not provide additional evidence of appellees' involvement. Further, in *Ingram,* there was no known bias of the informant against the defendant or known motivation to lie.

Appellees asserted at the suppression hearings that the informants were not reliable and presented the following facts in support of their argument: Moran, the informant who gave a written statement, was already in jail for another offense at the time he made the statement; appellee Richard Paladin had been a witness against Moran in an earlier proceeding; Moran had already been caught in a lie about this case; Moran would benefit from his information by being given immunity from prosecution; Moran was a known "liar and thief"; Moran was only fifty-to-seventy percent reliable; and Tomsik had been a past informant, but was of unknown reliability. Most important, the police had knowledge of all the above prior to the arrests.

Appellant claims *United States* v. *Di Stefano* (C.A. 2, 1977), 555 F. 2d 1094, 1100, removes past reliability as an issue since both informants participated in the burglary:

"* * * Although * * * an informant's trustworthiness must be demonstrated before there can be a finding of probable cause based on information he supplies, * * * there is no need to show past reliability where the informant is in fact a *participant* in or *witness* to the very crime at issue. * * *" (Emphasis added and citations omitted.)

*Di Stefano* cannot be viewed in a vacuum. When additional circumstances are known to exist which cast serious doubts as to the present credibility of the informant, then insufficient probable cause may properly be found.

The trial judges had an opportunity to hear and see the two detectives testify with regard to the basis of their belief of probable cause. Further, the detectives' assessment of the informants' credibility was damning. *Gates, supra,* at 236, noted that great deference should be given to the magis-

trate's determination, and even *Di Stefano* held that the "* * * informant's trustworthiness must be demonstrated * * *." *Id.* at 1100.

Beyond the issue of credibility, a review of the record shows that the written statement made by Moran was not sufficient to implicate appellees with the commission of a felony or theft offense. Specifically, the testimony and evidence presented at the suppression hearings demonstrated that the written statement of the other informant did not show that the appellees' complicity extended beyond an intent to vandalize the residence in question. Thus, a question obviously had to exist in the minds of the officers as to whether there was probable cause to believe that a felony or theft offense had been intended by appellees or whether the resulting felony was the result of Moran's and Tomsik's own contrivance.

Further, without the appellees' own statements, there was no corroboration of appellees' involvement in the burglary other than the informants' testimony. All that was revealed by the detectives' investigation prior to the arrests was that the informants obviously had personal knowledge of the burglary itself.

When the preceding facts are coupled with the testimony of the two detectives to the effect that both informants were of unknown or dubious credibility, we would have to agree with the trial judges that the state failed to show by a preponderance of the evidence that sufficient probable cause existed to justify a warrantless arrest.

As to the findings that there were Fifth Amendment violations as well in the interrogation of Sally Paladin, there was evidence that strongly suggests that she signed a written statement after she had been given oral *Miranda* warnings but before she had made a valid waiver. Further, the police report itself indicated that she had been arrested at the Harley Hotel in Willoughby at 11:30 a.m., but the *written Miranda* warning executed at the Eastlake Police Station was signed at 11:15 a.m.

In Richard Paladin's case, there were also serious questions raised about the effectiveness of the *Miranda* warning and waiver. He too claimed that the written *Miranda* warning and waiver were not signed until after the interrogation and written statements were obtained. There is additional evidence controverting the 3:00 p.m. notation on Richard Paladin's waiver. Appellee and others testified that he arrived at the police station at 3:00 p.m. His waiver shows it was signed at 3:00 p.m. It is not credible that a defendant would sign a waiver within seconds after reaching the police station, particularly when a detective testified that he had a fairly extensive conversation with the defendant about the facts of the case, the informants' statements and his wife's involvement.

Further, critical evidence exists concerning the voluntariness of Richard Paladin's statement. One of the detectives admitted that in effect he had told Paladin that his wife's involvement or responsibility could be lessened by a statement from him.

Again, there was sufficient evidence for the judges to properly conclude that the state failed to meet its burden of proof by a preponderance of the evidence establishing either the voluntariness of the statement or compliance with established *Miranda* procedures.

Finally, appellees point out that there was no specific assignment of error raised concerning that portion of the judgment entry which was based on the Fifth Amendment ruling.

Thus, appellees argue that even if probable cause had been established,

the lower court's judgments would still stand because those judgments were based in part on Fifth Amendment violations as well as the probable cause issue. Although App. R. 12(A) grants some discretion in addressing errors not specifically pointed out in the record, we do not believe that discretion extends to this type of situation:

"It is a time-honored maxim of appellate procedure that when an otherwise available appeal is not taken from an adverse judgment or order of the trial court, the affected party is held to have acquiesced in that determination and, consequently, waived its right to assert error therein on appeal of a related matter. * * *" *State* v. *Felty* (1981), 2 Ohio App. 3d 62, 64, 2 OBR 69, 71, 440 N.E. 2d 803, 806.

Here we have an instance where the appellant has only addressed one portion of the court's ruling. When an assignment of error draws our attention to only one part of a court's ruling, under the logic of *Felty*, we must assume that the appellant does not object to the balance of the ruling.

Therefore, even if the assignment of error dealing with Fourth Amendment violations were meritorious, the lower court's judgment would still be valid because of the unchallenged Fifth Amendment portion of the ruling. The judgments of the trial courts are therefore affirmed.

*Judgments affirmed.*

FORD, P.J., and COOK, J., concur.