Defendant-appellant, Eric J. Whitaker, appeals the decision of the Mason Municipal Court denying his motion to suppress evidence, and asserts that his subsequent conviction for operating a motor vehicle under the influence ("OMVI") and sentence should be vacated. We affirm.
At about 4:10 A.M. on August 30, 1997, appellant, then eighteen, was involved in a one car accident in Deerfield Township, Warren County, Ohio. Appellant was driving home when his car veered off of the road and struck a tree, causing severe injuries to appellant.
The accident was investigated by Trooper J. L. Gerstner of the Ohio Highway Patrol. Trooper Gerstner arrived at the scene at about 4:25 A.M. as emergency crews were rendering aid to appellant. At that time, Trooper Gerstner noticed an obvious smell of alcohol on appellant's breath. When asked what happened, appellant replied that he did not know, and that he had just been listening to music. After finishing his investigation of the scene, Trooper Gerstner went to Bethesda North Emergency Room, where appellant had been transported for further care.
At the hospital, Trooper Gerstner had to wake up appellant to speak to him, and again noticed the smell of alcohol on appellant's breath. Trooper Gerstner explained that he wished to have the hospital take a blood sample and read appellant his rights as set forth in Bureau of Motor Vehicles ("BMV") form 2255. This was witnessed by a hospital security officer. Appellant first acknowledged only by nodding his head. Trooper Gerstner then said that he had to have a verbal consent or refusal, and appellant responded "Yes." Medical assistant Deborah McLaughlin drew the blood, and Trooper Gerstner sealed and mailed the sample to the Highway Patrol Laboratory to be tested. Trooper Gerstner also informed appellant he was being arrested for OMVI. Appellant's blood alcohol level ("BAC") was .139, approximately seven times the legal limit for someone appellant's age.
Appellant filed a motion to suppress the test results, which was heard on October 21, 1997 in the Mason Municipal Court. He contended that Trooper Gerstner had not properly informed him of his rights, and that, therefore, his consent to the blood test was invalid. The trial court found that the appellant was properly informed of his rights and denied the motion.
At the hearing, the trial court allowed the State to cross-examine appellant's mother, Mrs. Whitaker, concerning a conversation between appellant and his counsel at which Mrs. Whitaker was present. In this conversation, appellant admitted that he had been drinking prior to the accident. Defense counsel objected, arguing that the conversation was privileged. The court overruled the objection.
Appellant assigns two errors, alleging that the court erred by allowing cross-examination on an allegedly privileged matter, and by not suppressing the blood test results. For the reasons below, we overrule both assignments of error and affirm the judgment of the trial court.
In his first assignment of error, appellant asserts that the trial court erred by compelling Mrs. Whitaker to testify as to the contents of the conversation between appellant and his counsel.
The attorney-client privilege is codified in R.C. 2317.02
which provides, in part:
The following persons shall not testify in certain respects:
 (A) An attorney, concerning communication made [by the attorney or client] in that relation or the attorney's advice to the client, except that the attorney may testify by express consent of the client or * * * and except that if the client voluntarily testifies * * *, the attorney may be compelled to testify on the same subject[.]
The attorney-client privilege applies to those communications made by clients to their attorneys with the intent that the communications remain confidential. Only the client may waive the privilege. State v. Shipley (1994), 94 Ohio App.3d 771, 775, appeal dismissed, 70 Ohio St.3d 1465. The two exceptions contained in R.C. 2317.02(A), express waiver and the client testifying about the privileged matter, are the only two methods by which the privilege may be waived. State v. McDermott (1995),72 Ohio St.3d 570, syllabus.
If Mrs. Whitaker was the client in the present case, then any communication between her and counsel would be protected unless she waived the privilege. See Shipley, 94 Ohio App.3d at 775. Even though Mrs. Whitaker may have sought out counsel for her son, and then paid for the attorney, the primary obligation of a lawyer is to represent his/her client, not the third person who is paying the bill. E.C. 5-23; DR 5-107. Appellant argues that Mrs. Whitaker was her son's agent, but the cases cited by appellant refute this argument. Had appellant been a minor, then Mrs. Whitaker's presence as her son's agent at the meeting with counsel would have been proper. See Bowers v. State (1876),29 Ohio St. 542, paragraph four of the syllabus. Because appellant was not a minor, such cases do not apply to the present facts.
In McDermott, the court found that the defendant's attorney could not be compelled to testify against the defendant because the privilege had not been waived in accordance with R.C.2317.02(A). 72 Ohio St.3d at 574. However, that did not prevent the state from compelling the brother of the attorney from testifying. The brother had been told the content of the privileged conversations by the defendant, and privilege does not attach to comments to a third person. See id. The attorney-client privilege prevents counsel from being compelled to disclose the content of a privileged communication without the permission of the client. It does not prevent a third person who has overheard the conversation or who has been told about the privileged matters from testifying or being compelled to testify. See, generally, id. at 573-74.
In the present appeal, the state did not attempt to have either appellant or counsel testify as to the communication in question. Had the state attempted to do so, the trial court would have been required to determine if appellant had waived the attorney-client privilege. R.C. 2317.02(A); McDermott, 72 Ohio St.3d 570. Since Mrs. Whitaker was not a party to the privilege, the existence or waiver of privilege is immaterial to her testimony. The assignment of error is overruled.
In his second assignment of error, appellant argues that the blood evidence should have been suppressed because consent to take the sample was obtained through improper coercion and a failure to follow procedure. Appellant asserts that Trooper Gerstner told him that if he did not consent to the sample, it would have the same effect as pleading guilty, and appellant would lose his license for a year. Appellant also contends that Trooper Gerstner failed to properly inform appellant of his rights as set forth in BMV form 2255 and failed to have the form properly witnessed.
An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. Maumee v. Johnson (1993), 90 Ohio App.3d 169, 171; State v. Williams (1993), 86 Ohio App.3d 37, 41. When reviewing the trial court's decision on a motion to suppress, the appellate court must accept that court's factual findings, rely upon the lower court's ability to assess the credibility of witnesses, and independently determine, without deference to the trial court, whether the court applied the appropriate legal standard. State v. Anderson (1995), 100 Ohio App.3d 688, 691. In a suppression hearing that involves BAC test results, the state has the burden of proving that facts necessary to show that the BAC test was done in accordance with the law to the extent that the defendant takes issue with the legality of the test. State v. Gasser (1980), 5 Ohio App.3d 217, 219.
Appellant challenges the result of the blood test, arguing that Trooper Gerstner failed to properly follow procedure in reading appellant his rights on refusing the test and implied consent. The determination of whether consent was voluntary is a question of fact, based upon the totality of the circumstances, and must be proven by the state. Anderson,100 Ohio App.3d at 694, citing Schneckloth v. Bustamonte (1973), 412 ___ U.S. ___ 218,93 S.Ct. 2041, and Florida v. Royer (1983), 460 ___ U.S. ___ 491,103 S.Ct. 1319.
Appellant's claim that his consent was not voluntary is based upon the testimony of his mother. She claims that Trooper Gerstner informed appellant that refusing the blood test would have the same effect as pleading guilty, a one year license suspension. On cross-examination, appellant's mother admitted she was not present when appellant was read the informed consent rights. Trooper Gerstner testified that he never made such a statement.
Issues of witness credibility are for the trier of fact, the trial court in this case, to decide. Williams,86 Ohio App.3d at 41. Determining what weight to give conflicting testimony is also a matter to be decided by the trial court. Id. We find that the trial court did not abuse its discretion in determining that Trooper Gerstner had not misinformed appellant of his right to refuse the test and consequences of a refusal.
Appellant also asserts that his consent was coerced because, when he was read BMV form 2255 and consented to the blood test, he was misinformed as to his rights. He further claims that he was not properly arrested and given Miranda warnings before giving his consent. He elaborates that if he was misinformed or if the arrest was invalid, none of the penalties associated with refusing a blood test after arrest would be applicable.
BMV form 2255 sets forth the terms and penalties of implied consent pursuant to R.C. 4511.191(C).[1] Testimony established that immediately after reading this form, receiving consent, and directing McLaughlin to draw blood, Trooper Gerstner physically arrested appellant. By its very words, R.C. 4511.191, the implied consent statute, applies to one who is being arrested, a process which may begin with the words "You are now under arrest," police confinement beyond the limits of Terry v. Ohio (1968), 392 ___ U.S. ___ 1, 88 S.Ct. 1868,[2] or both. State v. Maurer (1984), 15 Ohio St.3d 239, 255.
An "arrest" occurs when four elements are present: "(1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, (4) which is so understood by the person arrested. [Citations omitted.]" State v. Darrah (1980), 64 Ohio St.2d 22,26. An arrest involves "the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime. [Citations omitted.]" Id. To make a valid arrest, the officer must have "probable cause," which requires that "the arresting officer, at the moment of the arrest, have sufficient information based on the facts and circumstances within his knowledge or derived from a reasonably trustworthy source, to warrant a prudent man in believing that an offense [has] been committed by the accused." State v. Ingram (1984),20 Ohio App.3d 55, 57, citing Beck v. Ohio (1964), 379 ___ U.S. ___ 89,85 S.Ct. 223.
In the present case, Trooper Gerstner had sufficient probable cause to arrest appellant. He had twice smelled alcohol on appellant's breath. At the scene of the accident, he observed that appellant's behavior was consistent with one under the influence of alcohol. The nature of the accident which Trooper Gerstner investigated was also consistent with impaired driving. We find that there was probable cause to arrest, even before a blood test was performed. State v. Bernard (1985), 20 Ohio App.3d 375.
Trooper Gerstner evidenced an intent to arrest appellant once he arrived at the hospital. He immediately got appellant's attention and began to read the informed consent form, BMV form 2255. Trooper Gerstner also testified that he informed appellant that he was under arrest for OMVI. Trooper Gerstner formally arrested appellant, thus taking him into custody. The testimony adduced at the hearing shows that appellant was aware of this fact, submitted to the arrest and consented to the test. Trooper Gerstner made no attempt to elicit a statement from appellant, thus he was not required to Mirandize appellant at that time. State v. Feasel (1988), 41 Ohio App.3d 155, 157. The evidence presented supports the conclusion that Trooper Gerstner acted properly when he read BMV form 2255 to appellant and obtained appellant's consent.
Appellant also contends that BMV form 2255 was not properly witnessed, and that the evidence does not support the state's assertion that consent to the test was proper. Although the state did not present testimony from the witness listed on the form, they did present Trooper Gerstner and introduced the form into evidence. Appellant introduced no evidence that the witness' signature was not genuine, and we will not invalidate a trial court's finding based on mere speculation by appellant. Although the testimony of appellant's mother contradicts, in part, that of Trooper Gerstner, issues of credibility are left to the province of the finder of fact, not the appellate courts. State v. Williams (1992), 82 Ohio App.3d 39, 43, citing State v. DeHass (1967), 10 Ohio St.2d 230, 231. Furthermore, the trial court found that the evidence supported the state's argument that consent was voluntary and that all procedures were followed. We will not disturb this finding without evidence of an abuse of discretion. Anderson, 100 Ohio App.3d at 694. We therefore overrule appellant's second assignment of error.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] The implied consent warning in BMV form 2255 reads:
TEST AND REFUSAL CONSEQUENCES (MUST BE READ TO OMVI OFFENDER)
4511.191
You now are under arrest for operating a vehicle while under the influence of alcohol, a drug of abuse, or both alcohol and a drug of abuse and will be requested by a police officer to submit to a chemical test to determine the concentration of alcohol, drugs of abuse, or alcohol and drugs of abuse in your blood, breath, or urine.
If you refuse to submit to the requested test, or if you submit to the requested test and are found to have a prohibited concentration of alcohol in your blood, breath, or urine, your driver's license or commercial driver's license or permit or nonresident operating privilege immediately will be suspended for the period of time specified by law by the officer, on behalf of the Registrar of Motor Vehicles. You may appeal this suspension at your initial appearance before the court that hears the charges against you resulting from the arrest, and your initial appearance will be conducted no later than five days after the arrest. This suspension is independent of the penalties for the offense, and you may be subject to other penalties upon conviction.
You may make an appeal of this suspension in court at the time of your initial appearance. Even though you may appeal this suspension, your driving privileges will be suspended.
[2] "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Id. at 19, n. 16.