OPINION
{¶ 1} Defendant-appellant Charles M. Taylor appeals from his conviction and sentence, following a no-contest plea, upon one count of Possession of Cocaine, in an amount equaling or exceeding 100 grams, but not exceeding 500 grams, a felony of the second degree. Taylor contends that the evidence was obtained as the result of an *Page 2 
unlawful stop of a Greyhound bus on which he was a passenger. We agree. Consequently, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I {¶ 2} One afternoon in July, 2007, Major John DiPietro, of the Miami Township, Ohio, police force, received information from officers with the Cincinnati, Ohio, police department that they had received a tip from an informant that a passenger on a Greyhound bus traveling on northbound Interstate 75, with Detroit as its apparent destination, was in possession of illegal drugs and currency. The Cincinnati police department, with the cooperation of the Greyhound Bus Company, was able to communicate with the bus driver. The driver was instructed to pull the bus off the interstate highway and wait for further instructions. The bus stopped along the side of the highway at milemarker 43, which is near the intersection with Interstate 675.
 {¶ 3} Two Miami Township police officers, Siefert and Siney, responded, and found the bus parked alongside the highway. Seifert boarded the bus, and saw Taylor, who matched the physical description of the passenger who was allegedly carrying drugs. Taylor was asked to step off the bus. After doing so, he was asked a few questions.
 {¶ 4} Taylor, who by this time was handcuffed, consented to a search of a bag he had with him, and of his person. Nothing of interest was found in the bag. The officers found just over $5,000 in currency on Taylor's person. When asked about this, he explained that he was a rapper, and the money represented his payment for a *Page 3 
performance in Atlanta.
 {¶ 5} Taylor asked Siney what was going on. Siney said they were investigating alleged trafficking in illegal drugs. Taylor said, "two other guys with me, they are carrying drugs."
 {¶ 6} Taylor was advised of his rights under Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. He was asked if he had a garment bag, in addition to the bag that had already been searched. He said that he did, and that it was stored in the compartment under the bus. He consented to a search of that bag, which revealed nothing of interest.
 {¶ 7} Another passenger told the police that Taylor had put a black bag in the overhead storage compartment toward the front of the bus, a few rows from where Taylor was seated. The officers found a black bag in the place described, and asked if it belonged to anyone. None of the passengers claimed it. The bag was brought to Taylor, who was by now in a police cruiser. Taylor denied that the bag was his. The bus driver said he did not know to whom the bag belonged, and that he did not want it on his bus if it did not belong to a passenger.
 {¶ 8} The police officers, having determined that the black bag was abandoned, searched it. They found cocaine in the bag; also, a credit card in Taylor's name. When confronted with this information, Taylor said, "that is me, you got me."
 {¶ 9} Taylor was arrested and charged with Possession of Cocaine. He moved to suppress the evidence, contending, among other things, that it was obtained as the result of an unlawful stop. Following a suppression hearing, the trial court overruled his motion. Thereafter, Taylor pled no contest, was found guilty, and was sentenced *Page 4 
accordingly. From his conviction and sentence, Taylor appeals.
 II {¶ 10} Taylor's sole assignment of error is as follows:
 {¶ 11} "THE TRIAL COURT ERRED AND VIOLATED THE FOURTH AMENDMENT WHEN IT DENIED APPELLANT'S SUPPRESSION MOTION."
 {¶ 12} The phrasing of Taylor's assignment of error notwithstanding, it is the police, not the trial court, who allegedly, and in our view, did, violate Taylor's rights under the Fourth Amendment to the United States Constitution.
 {¶ 13} Taylor's brief raises a number of issues, but the issue of the propriety of the stop of the bus on which Taylor was a passenger is the only issue we need to discuss, since that issue is, in our view, dispositive. The searches that took place, and Taylor's statements, both before and after he was given his Miranda warnings, all flowed from the stop.
 {¶ 14} As for the stop, both parties identify the key issue as the reliability of the informant whose information provided the basis for the stop. Taylor contends that this informant was anonymous, which is the type of informant having the least intrinsic reliability; the State contends that this informant was not anonymous. Specifically, the State contends that: "This information came during an interview that the drug unit had with the passenger at the Cincinnati bus station." The State does not cite a source in the record for this factual assertion, and we have found no source for it in the transcript of the suppression hearing. John DiPietro, the Miami Township police officer who received the information from the Cincinnati police department, testified that he was told *Page 5 
"that they had received information from a passenger on the bus who was witness to drugs and money carried by the defendant * * * ." There is nothing in DiPietro's testimony to the effect that the informant was in the physical presence of the Cincinnati police officers, as opposed to having made the tip by telephone, or that the informant's identity was otherwise known to the Cincinnati police officers, so that the informant could be held to answer for making a false accusation. The trial court specifically found, in its decision overruling the motion to suppress, that: "The information they [the Miami Township police] received was second or third hand. It came from the Cincinnati Police Department who received it from an apparently anonymous tip."
 {¶ 15} Even information from an anonymous informant may be sufficiently reliable for an investigative stop if the accuracy of the accusatory information is corroborated in some fashion, sufficient to establish reliability, before the stop. Thus, in Alabama v. White
(1990), 496 U.S. 329, 110 S.Ct. 2412, a report from an anonymous informant that a particular woman would be carrying drugs from one particular location to another particular location, in a particularly described automobile was held to have had sufficient reliability to justify a brief, investigative stop once these predictions of the future conduct of the woman proved to be substantially true. The inference drawn from the accuracy of these predictions was that the anonymous informant was privy to the suspect's criminal purpose. The court pointed out that: "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties not easily predicted." Id., at 332. Significantly, the court described Alabama v. White as "a close case," suggesting that it is near the outer limit of those circumstances corroborating an anonymous tip that will confer sufficient reliability *Page 6 
to the tip. Id., at 332.
 {¶ 16} By contrast, the information provided by the anonymous informant in the case before us did not include any prediction of the suspected drug courier's future behavior; it simply described the informant, the clothes he was wearing, and the one bag he was carrying on the bus, all of which any fellow passenger, or anyone having seen him board the bus, for that matter, could have observed. The obvious danger in relying upon information from an anonymous informant to justify an investigative stop and detention is that someone with a malicious motive to harass or annoy another can make a false report anonymously, with impunity. That danger would have existed here; Taylor's fellow passenger, if the anonymous informant even was a fellow passenger, could have been someone irritated with Taylor because of some real or imagined slight, disposed to get even by making a false report to the police.
 {¶ 17} Of course, in the event, Taylor turned out to be someone carrying illegal drugs. But the purposes of the exclusionary rule are inconsistent with justifying a stop and detention based upon information that comes to the attention of the police only after, and as a result of, the stop and detention. Unless the police have the serendipitous good fortune to discover, as a result of an investigative stop and detention, evidence of some crime that is completely unrelated to the reasonable, articulable suspicion originally justifying the stop, any case where the exclusionary rule is invoked will necessarily involve a situation where evidence is obtained, as a result of the unlawful stop and detention, that corroborates the otherwise insufficiently reliable information that led to the stop.
 {¶ 18} In State v. Bradley (1995), 101 Ohio App.3d 752, a case cited by the trial *Page 7 
court in its decision, information supporting a stop of a bus came from the passenger's girlfriend, not from an anonymous source. In State v.Ramey (1998), 129 Ohio App.3d 409, another case cited by the trial court, the information leading to the stop of a suspected intoxicated driver was supplied by a passerby who "flagged down" a police officer to report the erratic driving observed by the passerby. The appellate court deemed this informant not to be anonymous, because the informant was not "[t]he classic example [of] the unidentified voice on the telephone, the caller refusing to give not only his or her name, but also the basis of the information." "There is nothing even remotely anonymous, clandestine, or surreptitious about a citizen stopping a police officer on the street to report criminal activity." Id., at 416. In the case before us, although the informant did provide the basis of the information, there is nothing in the record to indicate that the informant was other than completely anonymous, thereby immune from any repercussions that might result from a malicious, false report.
 {¶ 19} In State v. Ingram (1984), 20 Ohio App.3d 55, a case cited by the trial court in its decision, the court opined: "The probable cause needed to make a warrantless arrest constitutionally valid requires that the arresting officer, at the moment of arrest, have sufficient information, based on the facts and circumstances within his knowledge or derived from a reasonably trustworthy source, to warrant a prudent man in believing that an offense had been committed by the accused." Id., at 57, emphasis added. In the case before us, the intrusion upon Taylor's protected liberty interest was the lesser intrusion of an investigative stop, not an arrest, but the principle is the same: the intrusion must be justified by facts and circumstances known to the police, directly or indirectly, at the moment that the intrusionoccurs; it cannot be justified by information *Page 8 
subsequently obtained, even if that information is obtained soon after the intrusion. Otherwise, unlawful stops and arrests could be justified by the evidence obtained as a result thereof, which is inconsistent with the prophylactic purpose of the exclusionary rule.
 {¶ 20} The State argues that even if the stop was unlawful, the evidence found in the black bag should not be suppressed, because it was abandoned. But this evidence was clearly obtained as a direct and proximate consequence of the unlawful stop of the bus, so that it constitutes the fruit of the poisoned tree, and must be excluded.
 {¶ 21} Taylor's sole assignment of error is sustained.
 III {¶ 22} Taylor's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
WOLFF, P.J., and DONOVAN, J., concur.
Copies mailed to:
Mathias H. Heck, Jr.
Michele D. Phipps
Carlo C. McGinnis
 Hon. Timothy N. O'Connell *Page 1