THE STATE OF OHIO, APPELLEE, *v.* GADDIS, APPELLANT.

[Cite as State v. Gaddis (1973), 35 Ohio App. 2d 15.]

16

*Mr. John F. Holcomb,* prosecuting attorney, for appellee.

*Mr. Robert N. Piper,* for appellant.

SHANNON, J. This is an appeal of a judgment from the County Court of Butler County, area number one.

The record before us includes a transcript of the proceedings and from that we derive certain uncontroverted evidence.

On May 25, 1972, two peace officers, one a criminal investigator for the department of safety and security of Miami University and the other a sergeant of the Oxford, Ohio, police department, went with a warrant to search a room in one of the university's dormitories. Just after the search warrant had been served upon the occupant but before the actual search commenced, a knock was heard upon the closed door of the room. The door was opened by the caller, ultimately identified as the defendant Gaddis, the appellant herein, and he entered the room. Almost immediately, the occupant shouted a warning to defendant to get out. When Gaddis started to exit, the investigator seized his arm. Gaddis broke away to run down the hallway and was pursued by both police officers. Gaddis was seized again by an arm and the sergeant advised him that he was held by police and that they wanted "to talk to him." As Gaddis was being led back to the room, he broke away and attempted to flee. Then he was forceably restrained by the officers, placed against a wall in the room and searched. The investigator discovered a plastic bag containing green vegetation in the left front pocket of the trousers worn by Gaddis. Tests of the vegetation led the officers to believe that it was cannabis sativa and they charged Gaddis with possession or control of an hallucinogen pursuant to R. C. 3719.41 (a misdemeanor).

A trial without the intervention of a jury was had on June 26, 1972, after a continuance was obtained on May 30, 1972. When the state rested its case in chief, defense counsel moved that the court suppress the evidence on the ground that the green vegetation identified as cannabis sativa was obtained by an illegal search. That motion was coupled with another raising the question of whether the prosecution had adduced sufficient evidence to prove the charge alleged, the thrust of the argument being that the witness who had given his opinion that the substance was marijuana was not an expert. After the court ruled adversely to the accused on both motions, he opted not to offer any testimony or evidence in defense and the court made its finding of guilty as charged in the affidavit. It is from that final judgment that this appeal derives.

Two errors have been assigned. The first is based upon the contention that the defendant was convicted solely upon evidence that was inadmissible because it had been obtained as the result of an illegal search. The second assignment of error is that the court erred in finding the defendant to be guilty because the conviction "was based entirely upon unexpert [*sic*] police testimony." We construe this assignment to comprehend the question of the proper qualification of a witness as well as the weight of the evidence in totality.

To serve the purpose of coherency in this opinion, we will dispose of the assignments of error inversely.

The witness who testified that in his opinion the green vegetation taken from the person of the accused was cannabis sativa was a sergeant of the Oxford, Ohio police. In responding to questions intended to demonstrate his capacity to give an opinion, the witness stated that he had attended training sessions relative to narcotics and the identification of such by test. Further, he stated that he had performed a number of chemical tests upon substances thought to be narcotics and had given testimony in other trials as an expert witness. It is apparent from the record that the witness subjected the green vegetation to a Duquenois reagent test and examined the substance through

a microscope. Defense counsel subjected the witness to a full and searching cross-examination of his qualifications as an expert and upon his methods of identification of the particular substance involved in the case. The record convinces us that the witness was properly qualified and that the court did not err in receiving into evidence the opinion given. We take the general rule to be that stated in the first and third paragraphs of the syllabus in *McKay Machine Co.* v. *Rodman,* 11 Ohio St. 2d 77:

"1. In all proceedings involving matters of a scientific, mechanical, professional or other like nature, requiring special study, experience or observation not within the common knowledge of laymen, expert opinion testimony is admissible to aid the court or the jury in arriving at a correct determination of the litigated issue.

"3. Expert opinion testimony is admissible as to an ultimate fact without infringing the function of the jury, if the determination of such ultimate fact requires the application of expert knowledge not within the common knowledge of the jury."

There is nothing in the record to impeach or rebut the testimony of the expert witness, and a comparison of all the evidence compels the conclusion that the finding of guilt is not contrary to the manifest weight of the evidence. Therefore, the second assignment of error is not well taken.

The first assignment of error raises questions which give us considerable concern.

While it is beyond cavil that one who acts in a suspicious manner invites some inquiry by proper authority, it does not follow that police are unbridled in their activities upon the detention of that individual; that is, their activities must be reasonable under the circumstances as the officer credibly relates them in court.

In *Terry* v. *Ohio,* 392 U. S. 1, we find in the 5th paragraph of the syllabus the following:

"5. Where a reasonably prudent officer is warranted in the circumstances of a given case in believing that his safety or that of others is endangered, he may make a reasonable search for weapons of the person believed by

him to be armed and dangerous regardless of whether he has probable cause to arrest that individual for crime or the absolute certainty that the individual is armed. * * *

"(a) * * *

"(b) The reasonableness of any particular search and seizure must be assessed in light of the particular circumstances against the standard of whether a man of reasonable caution is warranted in believing that the action taken was appropriate. * * *"

It is axiomatic that an incident search may not precede an arrest and serve as part of its justification. (*Sibron* v. *New York*, 392 U. S. 40 at 63.)

By definition, an arrest is the taking, seizing or detaining of the person of another, either by touching or putting hands on him, or by an act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest. 5 Ohio Jurisprudence 2d 18, Arrest, Section 2.

Further, an arrest, as the term is used in criminal law, signifies the apprehension or detention of the person of another in order that he may be forthcoming to answer an alleged or supposed crime. 5 Ohio Jurisprudence 2d 19, Arrest, Section 3.

The Court of Appeals for Cuyahoga County, in deciding *State* v. *Terry*, 5 Ohio App. 2d 122, pronounced, as part of the first paragraph of the syllabus:

"A required element of an arrest is the intent of the officer to make an arrest."

In the case at bar, Gaddis departed hastily from the room about to be searched when the occupant therein shouted a warning to get out. Under the circumstances, the departure of Gaddis cannot be said to have been unusual or suspicious. Where an ostensibly innocent visitor enters a room, sees its usual occupant in the company of two strangers, hears from the occupant an abrupt, shouted warning to leave, and does so, that person's conduct is not so unusual as to lead a police officer to conclude from experience that criminal activity may be afoot and that such person may be armed and presently dangerous. Here, we must stress that

we are bound by the record and note that nothing therein indicates that the officers were in uniform and that it was apparent they were police authorities. Admittedly, neither of the two policemen had ever seen or heard of Gaddis before he entered the dormitory room.

When Gaddis was first seized by the arm he was, in our opinion, "arrested." Clearly, when again he was seized after pursuit and advised that he was held by police who wanted to talk to him, Gaddis was arrested.

Whatever may have been their right to search under the doctrine of *Terry* v. *Ohio, supra,* there is nothing before us to indicate a reasonable apprehension by the police that Gaddis was armed so as to entitle them to conduct a limited search of the outer clothing of Gaddis to discover weapons.

Here, the criminal investigator for the University very candidly testified as follows:

"Q. Now you say that somebody inside the room told him to leave and he did, and it was thereafter that somebody identified themselves as police officers? Is that right?"

"A. Yes sir."

"Q. And who was that who said 'We're police officers?' "

"A. Sergeant Ayers."

"Q. And he did not at that time arrest this defendant?"

"A. No sir."

"Q. What did you do before you arrested the defendant?"

"A. Within the room when the defendant started to leave the room I took hold of his arm, he jerked away from me and went out."

"Q. Isn't it a fact that you searched him before you arrested him?"

"A. Yes sir."

"Q. And was not the arrest made because of the search; because of what you found during the search?"

"A. Yes sir."

Surely, then, there was no intent to make an arrest in the foregoing sense; that is, to apprehend Gaddis to answer

for an alleged or supposed crime. Gaddis was charged with crime because of what the search of his pockets yielded.

We are compelled by the record viewed in light of controlling authority to conclude that the search was illegal because it preceded the arrest of Gaddis and served as the justification for his arrest. Such a search violates the guarantee of the Fourth Amendment of the Constitution of the United States, which protects the sanctity of the person against unreasonable intrusion on the part of all government agents. See: *Sibron* v. *New York, supra,* and *State* v. *Kratzer* (1972), 33 Ohio App. 2d 167.

Our dissertation, however, cannot be ended on this note because as a subordinate tribunal we are bound by pronouncements of the Ohio Supreme Court which compel the affirmance of the judgment below.

In *State* v. *Carter,* 21 Ohio St. 2d 212, the second paragraph of the *per curiam* opinion is:

"Inasmuch as the record clearly indicates that appellant and his counsel knew about the circumstances under which the evidence was obtained in ample time to prepare and file a pretrial motion to suppress the evidence in question, but did not do so, these assignments of error will not be considered by this court. *State* v. *Davis* (1964), 1 Ohio St. 2d 28."

Paragraph one of the syllabus of *State* v. *Davis,* 1 Ohio St. 2d 28, states:

"1. Where there has been an illegal search and seizure of evidence tending to incriminate an accused and such accused and his counsel know about such search and seizure in ample time to prepare and file a pretrial motion to suppress such evidence, a failure to do so will amount to a waiver by the accused of his right to object to admission of that evidence against him."

The record before us demonstrates without question that the motion to suppress the evidence was made for the first time after the state had rested its case. Further, there is nothing to suggest that the defense was taken by surprise. On the contrary, it is apparent from the tenor of the cross-examination of witnesses and the arguments ad-

dressed to the court that defense counsel knew all the particulars of the search and seizure in ample time to have filed a pretrial motion to suppress, and that the hiatus between the filing of the charge against Gaddis and the date of trial was sufficiently lengthy to have afforded such opportunity.

Consequently, we must find that the defendant waived his right to object to the admission of the disputed evidence used against him and that the first assignment of error is without merit.

The judgment of the County Court of Butler County is affirmed.

*Judgment affirmed.*

Hess, P. J., and Palmer, J., concur.