This appeal is pending before this court pursuant to our July 23, 1998 decision granting appellant's application to reopen his appeal pursuant to App. R. 26(B) and State v. Murnahan
(1991), 63 Ohio St.3d 60, 584 N.E.2d 1204. See State v.Stringer (July 23, 1998), Scioto App. No. 2506, unreported. Following the trial court's judgment of conviction and sentence, appellant, with new appellate counsel, appealed the trial court's judgment. We affirmed the trial court's judgment.State v. Stringer (Sept. 29, 1997), Scioto App. No. 2506, unreported. Pursuant to App. R. 26(B), we now consider the merits of appellant's reopened appeal as though it were appellant's initial appeal.[2]
Appellant, Ronald Stringer, raises the following assignments of error:[3]
FIRST ASSIGNMENT OF ERROR:
 "TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ASSERT THAT [THE] SEARCH OF MR. STRINGER EXCEEDED THE PERMISSIBLE SCOPE OF A TERRY V. OHIO (1968), 392 U.S. 1, 88 S.CT. 1868, 20 L.ED.2D 889[,] PAT-DOWN SEARCH FOR WEAPONS."
SECOND ASSIGNMENT OF ERROR:
 "TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO INFORM THE TRIAL COURT THAT FOURTH AMENDMENT JURISPRUDENCE PROHIBITS A WARRANTLESS ARREST MADE WITHOUT PROBABLE CAUSE."
THIRD ASSIGNMENT OF ERROR:
 "TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ARGUE THAT MR. STRINGER IS ENTITLED TO BE SENTENCED IN ACCORDANCE WITH THE MORE LENIENT SENTENCING PROVISIONS OF SENATE BILL 2."
 I STANDARD OF REVIEW
Because the same standard of review governs our analysis of each of appellant's assignments of error, we will begin by setting forth the standard of review applicable to appellant's assignments of error.
The Sixth Amendment right to counsel protects "the fundamental right to a fair trial." Strickland v. Washington
(1984), 466 U.S. 668, 684, 104 S.Ct. 2052, 2063,80 L.Ed.2d 674. "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding."Id., 466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d 674. Thus, effective counsel is one who "plays the role necessary to ensure that the trial is fair," id., 466 U.S. at 685,104 S.Ct. at 2063, 80 L.Ed.2d 674, and "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id., 466 U.S. at 686, 104 S.Ct. at 2064,80 L.Ed.2d 674.
To establish that defense counsel's conduct so undermined the functioning of the adversarial process, a defendant must establish: (1) that "counsel's performance was deficient"; and (2) that the "deficient performance prejudiced the defense."Id., 466 U.S. at 687, 104 S.Ct. at 2063, 80 L.Ed.2d 674. Counsel's performance is deficient if he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.,466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d 674; see, also, State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373 (stating that counsel's performance is deficient if counsel substantially violated one of his essential duties to his client); State v.Peeples (1994), 94 Ohio App.3d 34, 44, 640 N.E.2d 208, 215
(stating that counsel's performance is deficient if it "raise[s] compelling questions concerning the integrity of the adversarial process").
Furthermore, when addressing an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. See State v. Phillips (1995), 74 Ohio St.3d 72, 85,656 N.E.2d 643, 658 (stating that a reviewing court must assess the reasonableness of the defense counsel's decisions at the time they are made). Rather, the reviewing court "must be highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065,80 L.Ed.2d 674. As the Strickland Court stated, a reviewing court:
 "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "
Id., 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d 674; see, also, State v. Sallie (1998), 81 Ohio St.3d 673, 674,693 N.E.2d 267, 269; State v. Carter (1995), 72 Ohio St.3d 545,558, 651 N.E.2d 965, 977.
If a criminal defendant overcomes the heavy burden of demonstrating that trial counsel performed deficiently, the defendant then must establish that counsel's deficient performance prejudiced his appeal. To establish that trial counsel's deficient performance prejudiced the defendant's defense, a defendant must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687,104 S.Ct. at 2064, 80 L.Ed.2d 674; see, also, Bradley, supra;Peeples, supra (stating that prejudice exists if counsel's deficient performance "raises substantial questions about the reliability of the outcome of the trial").
In the case sub judice, we do not believe that appellant received ineffective assistance of trial counsel.
 II MOTION TO SUPPRESS
In his first assignment of error, appellant asserts that trial counsel was ineffective for failing to argue in the motion to suppress evidence that Sergeant Horner's search of appellant exceeded the scope of a Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, pat-down search for weapons. Appellant claims that if trial counsel had called Sergeant Horner, the law enforcement officer who discovered the razor blade in appellant's coat pocket, to testify at the motion to suppress evidence hearing, Sergeant Horner's testimony would have demonstrated that the officer violated the principles set forth in Terry. Appellant asserts that if trial counsel had introduced Sergeant Horner's testimony at the motion to suppress hearing, the trial court would have suppressed the razor blade and all evidence derived from the discovery of the razor blade. Appellant contends that suppression of the razor blade and the evidence flowing therefrom would have resulted in the trial court's dismissal of the charges against appellant.
The state asserts that Sergeant Horner's search did not violate appellant's Fourth Amendment protection against unreasonable searches. The state contends that Sergeant Horner's search was not, as appellant asserts, a Terry pat-down search for weapons. Rather, the state maintains that Sergeant Horner's search constituted a search incident to arrest. The state notes that the law enforcement officers initially possessed reasonable suspicion to stop appellant. The state argues that after appellant fled from the officers and discarded certain items that he was carrying, the officers' reasonable suspicion ripened into probable cause to arrest. Thus, the state asserts, when Sergeant Horner discovered the razor blade in appellant's pocket, Sergeant Horner was not conducting a Terry pat-down search for weapons; rather, Sergeant Horner was conducting a full custodial search incident to a valid arrest. Thus, the state asserts that even if trial counsel's failure to call Sergeant Horner as a witness constituted deficient performance, trial counsel's failure did not prejudice the defense.
Initially, we note that the Sixth Amendment's guarantee of assistance of counsel does not require trial counsel to file a motion to suppress in every case. State v. Flors (1987),38 Ohio App.3d 133, 139, 528 N.E.2d 950, 956 (citing Kimmelman v.Morrison (1986), 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305). Trial counsel's failure to file a motion to suppress may, however, violate the Sixth Amendment's guarantee of assistance of counsel when a solid possibility exists that the trial court would have suppressed the evidence. State v. Dotson (Mar. 27, 1998), Pickaway App. No. 97 CA 9, unreported; State v. Garrett
(1991), 76 Ohio App.3d 57, 600 N.E.2d 1130. The defendant bears the burden of directing the reviewing court to evidence in the record that demonstrates a solid possibility that the evidence would have been suppressed. Dotson, supra; see, also,State v. Gibson (1980), 69 Ohio App.2d 91, 95, 430 N.E.2d 954,957 (stating that when the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion [to suppress]"). Even when the record contains some evidence supporting a motion to suppress, a reviewing court should presume that counsel was effective if "counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act."State v. Edwards (July 11, 1996), Cuyahoga App. No. 69077, unreported (citing State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717).
Thus, from the foregoing principles one may reasonably conclude that trial counsel is not ineffective for failing to include every possible ground for suppressing evidence in a motion to suppress. Rather, to demonstrate that trial counsel's decision to omit a possible ground for suppression constituted ineffective assistance of counsel, a defendant must establish a solid possibility that the trial court would have suppressed the evidence if trial counsel had included the omitted ground for suppression. Cf. Dotson, supra.
In the case at bar, we believe that appellant failed to demonstrate a solid possibility that the trial court would have suppressed the evidence and dismissed the charges if trial counsel had argued in the motion to suppress that Sergeant Horner's search exceeded the scope of a Terry pat-down search for weapons. We agree with the state that Sergeant Horner's search of appellant constituted a search incident to a valid arrest.
The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. In Katz v. United States (1967), 389 U.S. 347,357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, the Supreme Court held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." See, also, Arkansas v. Sanders (1979), 442 U.S. 753, 759,99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (stating that a warrantless search is per se unreasonable and can be justified only if it falls within one of the "jealously and carefully drawn" exceptions to the Fourth Amendment warrant requirement); State v. Sneed
(1992), 63 Ohio St.3d 3, 6-7, 584 N.E.2d 1160, 1165; State v.Braxton (1995), 102 Ohio App.3d 28, 36, 656 N.E.2d 970, 975. The state bears the burden of establishing the application of one of the exceptions to the warrant requirement. State v.Kessler (1978), 53 Ohio St.2d 204, 207, 373 N.E.2d 1252.
Two exceptions to the warrant requirement are relevant in the case at bar: a Terry pat-down search for weapons and a search incident to a lawful arrest. Rawlings v. Kentucky (1980),448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633; United States v.Robinson (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427;State v. Ferman (1979), 58 Ohio St.2d 216, 389 N.E.2d 843;State v. Farndon (1984), 22 Ohio App.3d 31, 488 N.E.2d 894. Pursuant to the rule set forth in Terry, a law enforcement officer may stop an individual and may conduct a limited search for weapons if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. Terry, 392 U.S. at 21,88 S.Ct. at 1880, 20 L.Ed.2d 889; State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271; State v. Venham (1994), 96 Ohio App.3d 649,654, 645 N.E.2d 831, 833. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime. Whren v. United States (1996),517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89; Terry, supra.
Once an officer has lawfully detained an individual pursuant to Terry, the officer "may search only for weapons when conducting a pat down of the suspect." State v. Evans (1993),67 Ohio St.3d 405, 414, 618 N.E.2d 162, 170. The scope of aTerry search is:
 "a narrowly drawn authority to permit a reasonable search for weapons for the protection of a police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime."
Terry, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d 889. The purpose of a Terry "search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence." Evans, 67 Ohio St.3d at 408,618 N.E.2d at 166 (quoting Adams v. Williams (1972), 407 U.S. 143,146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612). Thus, a Terry
search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry,392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d 889.
In Evans, the Ohio Supreme Court emphasized that a Terry
pat-down search is limited in scope to discovering weapons that might be used to harm the officer "and cannot be employed by the searching officer to search for evidence of a crime."Evans, 74 Ohio St.3d at 414, 618 N.E.2d at 170. The court further explained: "Obviously, once the officer determines from his sense of touch that an object is not a weapon, the pat-down frisk must stop." Id. When the officer is unable to determine from his sense of touch whether the object felt is a weapon, the Evans court described the procedure as follows:
 "[A] hunch or inarticulable suspicion that the object is a weapon of some sort will not provide a sufficient basis to uphold a further intrusion into the clothing of a suspect. When an officer removes an object that is not a weapon, the proper question to ask is whether the officer reasonable believed, due to the object's 'size or density' that it could be a weapon. 3 LaFave Search and Seizure (2 Ed. 1987), 531, Section 9.4(c).
 'Under the better view, then, a search is not permissible when the object felt is soft in nature. If the object felt is hard, then the question is whether its "size and density" is such that it might be a weapon. But because "weapons are not always of an easily discernable shape," it is not inevitably essential that the officer feel the outline of a pistol or something of that nature. Somewhat more leeway must be allowed upon "the feeling of a hard object of substantial size, the precise shape or nature of which is not discernible through outer clothes," which is most likely to occur when the suspect is wearing heavy clothing.' "
Evans, 74 Ohio St.3d at 415, 618 N.E.2d at 171 (quoting 3 LaFave Search and Seizure (2 Ed. 1987), 531, Section 9.4(c)). The Evans court further stated:
 "Our holding today does not authorize the removal of a soft object that the officer knows or reasonably should know is not itself a weapon on the grounds that it may contain a small weapon such as a razor blade. ' "Something of the size and flexibility of a razor blade could be concealed virtually anywhere, and accordingly provide the pretext for any search, however thorough." ' (Footnote omitted.) 3 LaFave, Search and Seizure (2 Ed. 1987) 522, Section 9.4(c). Such police procedure would, therefore, be impermissible under Terry because it would be tantamount to allowing the more intrusive search incident to custodial arrest to be made without reasonable grounds to arrest."
Evans, 74 Ohio St.3d at 416, 618 N.E.2d at 171-72.
Appellant asserts that the foregoing principles demonstrate that Sergeant Horner's search transgressed the limits of aTerry search for weapons. We need not address appellant's contention, however, for we agree with the state that Sergeant Horner did not conduct a Terry search for weapons, but rather a full search incident to a lawful arrest.
In contrast to a Terry search, a search incident to a lawful arrest permits an officer to "conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well." State v. Jones (1996), 112 Ohio App.3d 206, 215,678 N.E.2d 285, 294. The United States Supreme Court has elaborated upon the nature of a search incident to arrest as follows:
 " * * * A custodial arrest of a suspect based upon probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest, which establishes the authority to search, and we hold that in the case of lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."
Robinson, 414 U.S. at 235, 94 S.Ct. at 477, 38 L.Ed.2d 427.
In Chimel v. California (1969), 395 U.S. 752, 762-763,89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, the Court further described the search incident to arrest exception as follows:
 "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary item must, of course, be governed by a like rule."
Thus, a search conducted incident to a lawful custodial arrest is not a limited search as in the case of a stop-and-frisk search conducted incident to an investigative stop. Rather, the danger inherent in any custodial arrest is sufficient to justify a full search of the arrestee without a warrant. State v. Harris (Sept. 29, 1989), Montgomery App. No. 11309, unreported.
 "The [Robinson] court elaborated that the full custodial search was not limited — as in the case of a stop-and-frisk search incident to an investigative stop based on less than probable cause to arrest — to conducting a frisk of outer clothing only and to removing such weapons an officer may reasonably believe a suspect has in his possession. * * *."
State v. Mathews (1976), 46 Ohio St.2d 72, 74-75,346 N.E.2d 151, 153.
After a lawful custodial arrest, law enforcement officers may conduct a full search of the arrestee. See Michigan v.DeFillippo (1979), 443 U.S. 31, 35, 99 S.Ct. 2627, 2631,61 L.Ed.2d 343; Robinson, 414 U.S. at 235, 94 S.Ct. at 477,38 L.Ed.2d 427; Gustafson v. Florida (1973), 414 U.S. 260,94 S.Ct. 488, 38 L.Ed.2d 456. A custodial arrest provides all the justification necessary to conduct a full search of the arrestee's person. See Robinson, supra; DeFillippo, supra;United States v. Edwards (1974), 415 U.S. 800, 94 S.Ct. 1234,39 L.Ed.2d 771; Chimel, supra. The lawful custodial arrest, standing alone, authorizes the search. Robinson, supra;DeFillippo, supra. Furthermore, "a full search of the person incident to a lawful custodial arrest is not only an exception to the warrant requirement of the Fourth Amendment but is also a 'reasonable' search under that amendment." State v. Mathews
(1976), 46 Ohio St.2d 72, 74, 346 N.E.2d 151, 153 (citingRobinson, supra).
Moreover, "[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification."Sibron v. New York (1968), 392 U.S. 40, 63, 88 S.Ct. 1889,1902, 20 L.Ed.2d 917. In other words, law enforcement officers must possess probable cause to arrest prior to any search of the individual so that no evidence gained from the search is used to support probable cause. Rawlings, 448 U.S. at 111,100 S.Ct. at 2564-65, 65 L.Ed.2d 633; State v. Moon (1991), 74 Ohio App.3d 162,167, 598 N.E.2d 726, 729-30. Nonetheless, when "the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search precede the arrest rather than vice versa." Rawlings, 448 U.S. at 111,100 S.Ct. at 2564, 65 L.Ed.2d 633. "This is true only so long as the fruits of the search were not necessary to support probable cause to arrest." State v. Fahy (1988), 49 Ohio App.3d 160,161, 551 N.E.2d 1311, 1313; see, also Smith v. Ohio (1990),494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464
(stating that " 'justify[ing] the arrest by the search and at the same time * * * the search by the arrest,' just 'will not do' "); Moon, 74 Ohio App.3d at 167, 598 N.E.2d at 729.
In order for the search incident to arrest exception to apply, the state must demonstrate that the arrest was lawful. A lawful arrest requires (1) an "arrest" and (2) probable cause to arrest. We first will determine when the officers "arrested" appellant,[4] and then we will examine whether the officers possessed probable cause to arrest appellant.
An arrest is the "quintessential" seizure of the person.California v. Hodari D. (1991), 499 U.S. 621, 624,111 S.Ct. 1547, 1549, 113 L.Ed.2d 690. "[A]n arrest, in the technical, as well as the common sense, signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of a formal charging with a crime." State v.Benedict (Nov. 3, 1995), Washington App. No. 94 CA 28, unreported. "[T]he mere grasping or application of physical force with lawful authority, whether or not it succeeded in subduing the arrestee," may be a sufficient circumstance to indicate that an arrest occurred. See Hodari D.,499 U.S. at 624-25, 111 S.Ct. at 1549, 113 L.Ed.2d 690 (citing Whitehead v.Keyes, 85 Mass. 495, 501 (1862) ("An officer effects an arrest of a person whom he has authority to arrest, by laying his hand on him for the purpose of arresting him, though he may not succeed in stopping and holding him.")).
The moment at which an investigatory stop ripens into an arrest depends upon the particular facts and circumstances present in each case. In Benedict, supra (quoting United Statesv. Hastamorir (C.A.11, 1989), 881 F.2d 1551, 1556), we discussed when a Terry detention may escalate into an arrest:
 " 'In determining "when" an investigatory stop ripens into an arrest, no bright line exists. Instead, in determining whether an investigative detention is unreasonable, "common sense and ordinary human experience must govern over rigid criteria." United States v. Espinosa-Guerra
(C.A.11, 1986), 805 F.2d 1502, 1509 (quoting United States v. Sharpe (1985), 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605.' "
We note that the state "should be afforded the opportunity to date the arrest as early as it chooses following the obtaining of probable cause." State v. Pettry (Aug. 9, 1990), Jackson App. Nos. 617 618, unreported (citing Peters v. New York
(1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.
The Ohio Supreme Court has set forth the following four factors courts should use in determining whether an arrest has occurred:
 "An arrest occurs when the following four requisite elements are involved: (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested."
State v. Barker (1978), 53 Ohio St.2d 135, 139,372 N.E.2d 1324, 1328, certiorari denied (1978), 439 U.S. 913,99 S.Ct. 285, 58 L.Ed.2d 260; see, also, State v. Darrah (1980), 64 Ohio St.2d 22, 412 N.E.2d 1328. Furthermore,
 " * * * In determining 'when' a person is arrested, [a reviewing court should] ask at what point, 'in view of all the circumstances surrounding the incident, a reasonable person would have believed he [she] was not free to leave.' United States v. Hammock, 860 F.2d 390, 393
(11th Cir. 1988). Circumstances which indicate an arrest include: the blocking of an individual's path or the impeding of his progress; the display of weapons; the number of officers present and their demeanor; the length of the detention; and the extent to which the officers physically restrained the individual. This list is not exclusive. United States v. Hammock, at 393."
United States v. Hastamorir (C.A.11, 1989), 881 F.2d 1551, 1556
Moreover, a reviewing court need not agree with an officer's statement regarding the status of a defendant's seizure. It is well-settled that an officer's subjective view of whether probable cause existed to arrest the suspect is not dispositive of the issue. See Berkemer v. McCarty (1984), 468 U.S. 420,104 S.Ct. 3138, 82 L.Ed.2d 317; Florida v. Royer (1983),460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (holding that simply because the officers did not believe probable cause to arrest existed would not foreclose the state from justifying defendant's custody by proving probable cause); see, also,United States v. Resnick (C.A.5, 1972), 455 F.2d 1127, 1132
(stating that "the scope of the Fourth Amendment is not determined by the subjective conclusion of the law enforcement officer"). Rather, the reviewing court should examine the objective facts and circumstances when determining whether the defendant was under arrest. See Katz and Gianelli (1996), Criminal Law, 107, Section 6.2. As Judge Christley stated in her concurrence in State v. DiNickle (Dec. 3, 1997), Ashtabula App. No. 93-A-1771, unreported:
 "[C]ourts have disregarded the officers' rationale for a search as inconclusive, finding that 'it is of no importance that the police may have thought their only power was to make an inventory; the test is what could lawfully be done, not what the policeman thought the source of their power to be.' United States v. Ochs (C.A.2, 1979), 595 F.2d 1247, 1256; see, also, United States v. Roy (C.A.11, 1989), 869 F.2d 1427
(officer viewed search as a safety inspection; court upholds it as a search on probable cause); Herod v. State (1987), 311 Md. 288, 534 A.2d 362
(officer viewed car search as a search for self-protection incident to a Terry stop; court uphold search as a search made on probable cause)."
Thus, while we recognize that much of the law enforcement officers' testimony at the motion to suppress hearing and at trial reflected the officers' beliefs that appellant had not been arrested prior to the discovery of the razor blade, we do not believe that the officers' subjective beliefs as to the status of appellant's custody controls our decision.
We note that the existence of an arrest does not depend upon the utterance of the words, "you are under arrest." State v.Mauer (1984), 15 Ohio St.3d 239, 255, 473 N.E.2d 768, 784;State v. Jaeger (July 9, 1993), Washington App. No. 92 CA 30, unreported. As Katz and Gianelli suggest in their treatise: "[i]f the officer informs the subject of his intention to arrest, then the objective test is satisfied. If the officer does not inform the subject, there is not an arrest until the officer exercises control over the subject." Katz and Gianelli, 110, Section 6.2.
Furthermore, in determining when an arrest occurred, courts may consider the law enforcement officers' behavior. Courts may examine: (1) whether the officers touched the individual; (2) whether the officers displayed a weapon; (3) whether the officers handcuffed the individual; and (4) the type of words spoken by the police officer. Id. at 110, Section 6.2. Whether the officers' conduct contributes to a finding that the officers arrested the individual "turns upon the degree of physical force and show of authority communicated by the police." Id. at 110, Section 6.2.
In State v. Gaddis (1973), 35 Ohio App.2d 15, 299 N.E.2d 304, the court concluded that the officers' conduct constituted an arrest and not a Terry investigative detention when the officers grabbed the defendant's arm, pursued the defendant when he fled, grabbed the defendant and held him again, and then fully searched the defendant rather than performing a limited pat-down for weapons.
In State v. Nelson (1991), 72 Ohio App.3d 506,595 N.E.2d 475, the court likewise concluded that the officers' conduct constituted an arrest and not a Terry detention when the officers pursued the defendant and handcuffed the defendant after the pursuit ended.
In the case at bar, we believe that appellant was under arrest prior to Sergeant Horner's discovery of the razor blade. As in Nelson and Gaddis, appellant fled when he saw the officers approaching. The officers pursued appellant, and when the officers caught up with appellant, one of the officers displayed a gun. The officers fought to restrain appellant, placing him face down on the ground and forcibly removing his hands from beneath his body. Once the officers physically restrained appellant they further restrained him with handcuffs. Unlike the situation in Benedict, the officers at no time informed appellant that he was free to leave. Rather, we believe that a reasonable person in appellant's position would have understood that he was not free to leave and was under arrest.
Although the officers did not express an explicit intention to arrest appellant, as the court stated in Mauer, supra, an officer need not specifically inform the individual that he is "under arrest" in order for a reviewing court to conclude that the officer had, in fact, arrested the individual. Furthermore, as we stated above, the officers' subjective intention is not controlling. We believe that the objective circumstances surrounding the officers' detention of appellant demonstrate that the officers had "arrested" appellant prior to the discovery of the razor blade.
Having determined that appellant was under arrest, we next must determine whether the law enforcement officers possessed probable cause to arrest appellant.
A warrantless arrest is valid if the arresting officer possessed probable cause to believe that the suspect committed an offense. Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223,225, 13 L.Ed.2d 142; State v. Otte (1996), 74 Ohio St.3d 555,559, 660 N.E.2d 711, 717. Probable cause to arrest exists if all the facts and circumstances within the officer's knowledge were sufficient to cause a prudent person to believe that the individual had committed or was committing an offense. Ornelasv. United States (1996), 517 U.S. 690, 696, 116 S.Ct. 1657,1663, 134 L.Ed.2d 911; Beck; State v. Heston (1972), 29 Ohio St.2d 152,155-56, 280 N.E.2d 376, 379; see, also, Otte,74 Ohio St.3d at 559, 660 N.E.2d at 717 ("Probable cause exists when the arresting officer has sufficient information from a reasonably trustworthy source to warrant a prudent person in believing that the suspect has committed or was committing the offense."). We note that probable cause deals "with probabilities — the factual and practical nontechnical considerations of everyday life on which reasonable and prudent men act — and is a fluid concept, to be based on the totality of the circumstances, and not reduced to a neat set of legal rules." State v. Ingram (1984), 20 Ohio App.3d 55, 61,484 N.E.2d 227, 230 (citing Illinois v. Gates (1983), 462 U.S. 213,232-33, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527); see, also,Ornelas, supra. Probable cause to arrest is less than the amount of evidence needed to prove guilt beyond a reasonable doubt in a criminal trial. Ornelas; Adams v. Williams (1972),407 U.S. 143, 149, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612. Rather,
 "[p]robable cause is a flexible, common sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief ' * * * that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false."
Texas v. Brown (1983), 460 U.S. 730, 746, 103 S.Ct. 1535,75 L.Ed.2d 502.
In determining whether probable cause to arrest exists, a reviewing court should examine the "totality of the circumstances." Illinois v. Gates (1983), 462 U.S. 213, 230-31,103 S.Ct. 2317, 2328, 76 L.Ed.2d 527. The relevant inquiry when examining the totality of the circumstances supporting probable cause "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncrimnal acts." Id., 462 U.S. at 243-44
n. 13, 103 S.Ct. at 2335, 76 L.Ed.2d 527.
An informant's tip may contribute to the circumstances supporting probable cause to arrest. Id. In determining whether an informant's tip supports probable cause to arrest, a reviewing court should examine the "totality of the circumstances" surrounding the informant's tip. Id.,462 U.S. at 233, 103 S.Ct. at 2329, 76 L.Ed.2d 527. Under the totality of the circumstances test, an informant's veracity, reliability, and basis of knowledge are all relevant factors.Id., 462 U.S. at 233, 103 S.Ct. at 2329, 76 L.Ed.2d 527. The foregoing factors, however, "should be understood simply as closely intertwined issues which may illuminate the common sense practical question of whether probable cause exists."Ingram, 20 Ohio App.3d at 61, 484 N.E.2d at 230.
In State v. Colbert (Mar. 7, 1990), Hamilton App. NO. C-880471, unreported, the court held that a confidential informant's tip gave the officers the requisite probable cause to arrest when the informant was shown to be credible and reliable and when the tip "[was] subsequently corroborated, in some significant combination, with respect to the name or physical description of a suspect, the location of the illegal sale, the time of the sale, the description of the automobile driven by the suspect or the car's license plate numbers."
In addition to an informant's tip, other circumstances may give an officer probable cause to arrest. For instance,
 "deliberatively furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest."
Sibron, 392 U.S. at 66, 88 S.Ct. at 1904, 20 L.Ed.2d 917.
Thus, an informant's tip, an individual's flight upon seeing approaching officers, and an individual's furtive conduct all may contribute to a finding of probable cause.
In the case at bar, we believe that the totality of the circumstances demonstrate that the officers possessed probable cause to arrest appellant. First, the officers received information from a reliable confidential informant that appellant was selling drugs. At the motion to suppress evidence hearing, the officers testified that the informant had given the officers information in the past that had turned out to be reliable. Furthermore, the officers corroborated the informant's statement regarding the location at which appellant was selling drugs and regarding the physical description of appellant, including the clothes appellant was wearing. Second, appellant fled when he saw the officers approaching. Third, appellant acted suspicious by throwing down various items and by furtively shoving his hands in his pockets. Finally, the officers testified that appellant was uncooperative throughout the encounter. We therefore conclude that the facts and circumstances within the officers' knowledge were sufficient to warrant a prudent individual in believing that appellant had committed or was committing an offense.
Having determined that the officers lawfully arrested appellant prior to the discovery of the razor blade, we conclude that Sergeant Horner discovered the razor blade during a search incident to a lawful arrest, and not during aTerry pat-down search for weapons. Consequently, had appellant's trial counsel asserted in the motion to suppress evidence that Sergeant Horner exceeded the scope of a Terry
pat-down search for weapons, we do not believe that a solid possibility exists that the trial court would have suppressed the razor blade and the fruits derived from the discovery of the razor blade. Thus, under the facts presented in the casesub judice we conclude that appellant has failed to demonstrate that trial counsel's performance was deficient. Moreover, trial counsel's performance did not prejudice appellant.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 III
In his second assignment of error, appellant asserts that trial counsel rendered ineffective assistance of counsel by failing to properly inform the trial court that the law enforcement officers lacked probable cause to arrest appellant. We note that our discussion under appellant's first assignment of error resolves the issue presented in appellant's second assignment of error.
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 IV
In his third assignment of error, appellant asserts that trial counsel was ineffective for failing to argue that appellant was entitled to be sentenced in accordance with the more lenient sentencing provisions of Senate Bill 2. We disagree with appellant.
In State v. Rush (1998), 83 Ohio St.3d 53, 697 N.E.2d 634, paragraphs one, two, and three of the syllabus, the Ohio Supreme Court held that:
 "1. The phrase "notwithstanding division (B) of section 1.58 of the Revised Code," contained in Section 5 of Am.Sub.S.B. No. 2 (146 Ohio Laws, Part IV, 7136) as amended by Section 3 of Am.Sub.S.B. No. 269 (146 Ohio Laws, Part VI, 11099) cannot be construed as an attempt to amend R.C. 1.58(B).
 2. Because the General Assembly has expressly stated that the amended sentencing provisions of Am.Sub.S.B. No. 2 are applicable only to those crimes committed on or after its effective date, R.C. 1.58(B) is inapplicable. The amended sentencing provisions of Am.Sub.S.B. No. 2 apply only to those crimes committed on or after July 1, 1996.
 3. Section 5 of Am.Sub.S.B. No. 2, as amended by Section 3 of Am.Sub.S.B. No. 269, does not violate the constitutional prohibitions against (ex post facto and retroactive legislation."
We believe that the Rush decision fully resolves appellant's third assignment of error. Appellant nevertheless asserts that the Ohio Supreme Court erroneously decided the ex post facto
issue. This court, however, cannot disregard the syllabus law set forth in an Ohio Supreme Court opinion. As the court stated in World Diamond, Inc. v. Hyatt Corp. (1997), 121 Ohio App.3d 297,306, 699 N.E.2d 980, 985-86:
 "The syllabus of an opinion issued by the Supreme Court is the law of the case and all lower courts are bound to adhere to the principles set forth therein. State ex rel. Heck v. Kessler
(1995), 72 Ohio St.3d 98, 102-103, 647 N.E.2d 792, (citations omitted). All trial courts and intermediate courts of appeals are charged with accepting and enforcing the law as promulgated by the Supreme Court and are bound by and must follow the Supreme Court's decisions. Consolidated Rail Corp. v. Forest Cartage Co. (1990), 68 Ohio App.3d 333, 341, 588 N.E.2d 263, citing Thacker v. Bd. of Trustees of Ohio State Univ. (1971), 31 Ohio App.2d 17, 285 N.E.2d 380. The body of the opinion is considered dictum."
Consequently, we find no merit to appellant's argument that trial counsel was ineffective for failing to request the trial court to sentence appellant in accordance with Senate Bill 2.
Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment Opinion as to Assignments of Error II III; Concurs in Judgment Only as to Assignment of Error I
Kline, P.J.: Concurs in Judgment Opinion
For the Court
 BY: ______________________ Peter B. Abele, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[2] We adequately set forth the facts of the case sub judice inState v. Stringer (Sept. 29, 1997), Scioto App. No. 97CA2506, unreported, as follows:
"The record before the court reveals the following facts. On March 25, 1996, Todd M. Bryant, an officer with the Portsmouth Police Department and a member of the Southern Ohio Law Enforcement Drug Task Force, received a phone call at the drug task force office from a confidential informant. The informant told Officer Bryant that he wished to give Officer Bryant some "tips" concerning people dealing crack cocaine around Fourteenth and Waller Streets and Fifteenth and Waller Streets in Portsmouth. Specifically, the informant told Officer Bryant that a person from Cincinnati, known as "Shorty Dog," was near Fourteenth or Fifteenth Street and Waller Street, wearing a checkered colored shirt and a hat turned to the side. The informant stated that "Shorty Dog" was dealing in drugs.
In response to the informant's call, Officer Bryant met with members of the drug task force, Sergeant Horner, Deputy Duduit, and Deputy Kendall, to discuss how to approach the situation. The members decided that Officer Bryant, Deputy Duduit, and Sergeant Horner would arrive on the scene in plain clothes and in unmarked vehicles, and that Sergeant Thoroughman would approach the scene in a police cruiser and in full police uniform.
As Officer Bryant approached Fourteenth and Waller Streets, he saw appellant standing near an apartment building. Officer Bryant testified that appellant was wearing a checkered colored coat, had a ball cap on, and was holding a duffel bag and a Kroger's bag. When appellant noticed Officer Bryant's presence, he dropped the items that he was carrying and began running.
Officer Bryant identified himself as a police officer and followed appellant to the back of the apartment buildings. When Officer Bryant caught up with appellant, he ordered appellant to the ground. Appellant fell to the ground with his hands beneath his stomach. Officer Bryant asked appellant to uncover his hands, so that Officer Bryant could handcuff him. Appellant refused to cooperate. Officer Bryant was unable to pull appellant's arms out from underneath his body. With the help of two other officers, Officer Bryant handcuffed appellant. The officers testified that appellant still had his hands clenched.
Before placing appellant in the police cruiser, Sergeant Horner conducted a quick pat-down search. Sergeant Horner's search revealed a razor blade with what appeared to be white residue on it. Additionally, as part of routine police procedure, Former Officer Jake Stockham, the transporting officer, thoroughly checked the police cruiser for weapons or contraband. He lifted up the back seats and looked under them. Officer Stockham did not find any weapons or contraband and proceeded to place appellant in the cruiser.
Upon appellant's departure from the cruiser, also as part of routine police procedure, Officer Stockham again checked the cruiser for weapons or contraband that a transportee may have attempted to discard during the transport. Officer Stockham discovered 1.5 grams of crack cocaine under the cruiser's rear seat."
[3] We note that appellant's assignments of error vary in form, but not in substance, from the assignments of error as presented in appellant's December 29, 1997 application for reopening. In his application, appellant alleged that his appellate counsel was ineffective for failing to raise the following assignments of error:
 "TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO SUBPOENA OFFICER HORNER, THE OFFICER WHO CONDUCTED THE SEARCH OF MR. STRINGER, AT THE MOTION TO SUPPRESS HEARING."
 "TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PROPERLY ASSERT IN HIS MOTION TO SUPPRESS AND AT THE MOTION TO SUPPRESS HEARING THAT THE POLICE OFFICERS LACKED PROBABLE CAUSE TO ARREST MR. STRINGER, COUNSEL FAILED TO APPRISE THE TRIAL COURT OF THE UNITED STATES SUPREME COURT PRECEDENTS THAT WOULD HAVE FOCUSSED [SIC] THE TRIAL COURT'S ATTENTION ON THE POLICE OFFICER'S CONDUCT AND NOT ON MR. STRINGER'S SUBJECTIVE BELIEF THAT HIS CONDUCT WAS REASONABLE."
 "THE TRIAL COURT ERRED IN VIOLATION OF R.C. 1.58(B) AND ARTICLE II, SECTION 15 OF THE OHIO CONSTITUTION WHEN IT SENTENCED MR. STRINGER TO 4 YEARS IN PRISON. SINCE HE WAS SENTENCED AFTER THE EFFECTIVE DATE OF SENATE BILL 2, MR. STRINGER SHOULD HAVE BEEN SENTENCED TO CONCURRENT SENTENCES CONSISTENT WITH S.B. 2."
[4] In the case at bar, critical to the state's argument is the assertion that probable cause to arrest appellant existed independent of the discovery of the razor blade. At the hearing, the state asserted that the officers' reasonable suspicion ripened into probable cause to arrest: (1) when appellant fled from the officers; (2) when appellant made furtive movements inside his clothing; and (3) when the officers discovered the razor blade containing white residue.
We recognize that the state's argument at the motion to suppress hearing concerning probable cause to arrest differs from its argument in the instant appeal. We do not believe, however, that the state is necessarily prohibited from approaching appellant's arguments in a different light. During the motion to suppress hearing, the state limited its arguments to those that would counter appellant's arguments. During the proceedings below, the state was not particularly required to defend Sergeant Horner's search. In the case at bar, however, appellant raises the issue of the validity of Sergeant Horner's search, and we believe that the state may raise the arguments, even if slightly inconsistent with the arguments raised below, necessary to defend Sergeant Horner's search. Cf. State v.Peagler (1996), 76 Ohio St.3d 496, 500-01, 668 N.E.2d 489,493-94.