OPINION
Plaintiff-appellant, the State of Ohio, appeals the December 1, 2000 Judgment Entry of the Guernsey County Court of Common Pleas granting defendant-appellee Luis U. Ortiz's motion to suppress evidence. Appellant also appeals the December 5, 2000 Judgment Entry which clarified the trial court's December 1, 2000 Judgment Entry and suppressed statements allegedly made by appellee at the scene of the arrest.
 STATEMENT OF THE CASE AND FACTS
Approximately six months before the incident leading to appellee's arrest, Michael Delp, a prisoner at the Guernsey County Jail, volunteered to provide Officer Jon Milam, a member of the Guernsey County Southeastern Ohio Narcotics Task Force (hereinafter "SENT") and Detective Larry Abel, of the Guernsey County Police Department, information regarding individuals involved in drug activity. Mr. Delp had sold crack cocaine and marijuana in Cambridge, Ohio, in 1999 and 2000. Between 1994 and 2000, Mr. Delp had been convicted of seven separate felony offenses, four of which were drug offenses.
At the time of his conversations with Officer Milam, Mr. Delp was incarcerated in the Guernsey County Jail for a parole violation, based upon an arrest for Possession of Crack Cocaine. Mr. Delp offered information about his supplier of heroin and cocaine in exchange for a lesser sentence on his pending drug charge, and agreed to arrange an undercover drug buy in cooperation with SENT.
At least ten days before the undercover drug buy was to take place, law enforcement officials were advised by Mr. Delp of appellee's name, his description, his age, the make and color of his car, the license number of the car he would be driving and in which he would be transporting illegal drugs into Cambridge.
Appellee was a twenty-one year old male from Puerto Rico who had lived in Puerto Rico for twenty years, but then lived in the Cleveland area. Spanish was appellee's first language however, appellee spoke some English. In February, 2000, appellee was arrested in Cleveland on felony charges. At that time, the police read appellee's Miranda rights to him in Spanish.
Mr. Delp testified he had known appellee for over four years. In fact, the two had served time together in the Cuyahoga County Jail. Mr. Delp does not speak Spanish and testified he communicated with appellee only in English.
Mr. Delp set up a drug sale with Cambridge police officers and SENT members for July 23, 2000. During the day, Mr. Delp and appellee were in constant telephone communication with each other. The police were not privy to the conversations between Mr. Delp and appellee, but Mr. Delp communicated each development with law enforcement officials. Mr. Delp provided the police with the description of the car and explained the car was owned by appellee's girlfriend. The police were able to run a license check and verify this information. Additionally, Mr. Delp told the police the heroin and cocaine would be located underneath the glove box in appellee's vehicle.
Appellee was to meet the two undercover officers for the sale at 1:30 a.m. in a McDonalds' parking lot. However at the time appellee arrived, the McDonalds was closed. So as not to be conspicuous, appellee contacted Mr. Delp and moved the buy location to a nearby BP gas station. Mr. Delp then alerted the police officers to appellee's new location.
From the information provided by Mr. Delp, the officers identified appellee and his vehicle outside the BP station. Six SWAT team officers arrived in two unmarked vehicles. These officers were dressed in normal SWAT gear. In addition, the police arranged to have a certified drug-sniffing dog at the scene. The SWAT team officers pulled one police vehicle behind and one in front of appellee's car. The officers approached appellee with guns drawn. Appellee was sitting in the driver's seat of his car, talking on his cell phone and the car window was down. Lt. Milam overheard appellee say in English "Mike, you set me up. I'm going to fucking kill you." T. at 36. After the SWAT team secured the scene, additional police cruisers and unmarked vehicles arrived on the scene.
The officers removed appellee from his car, placed him on the ground, and handcuffed him. Det. Abel read appellee his Miranda rights in English. After announcing these rights, Det. Abel asked appellee if he understood his rights. Det. Able testified appellee nodded and said yes.
Det. Abel helped appellee up and led him to a marked cruiser. Officer Abel told appellee the police needed to search the vehicle and asked appellee: "Is there anything in the vehicle, anything illegal in the vehicle that we might find that you might want to tell me about now?" T. at 72. At that time, Det. Abel testified appellee looked at him as if appellee did not understand the question. After Det. Abel repeated the question, appellee continued to look confused.
At approximately the same time, the canine handler took the dog over to appellee's vehicle. The dog indicated on the vehicle by becoming very agitated and scratching the paint on the vehicle.
Appellee saw the dog alert on the vehicle. Det. Abel noticed appellee's somewhat defeated expression and asked appellee what the police would find in the car. At that time appellee:
 started to make the motion like he was trying to describe where something might be and he said its under up under kind of a broken up under. I said the dashboard? He said: yeah. I said: Which side? He went: not the driver's side, the passenger side. He was indicating that it was shoved up underneath there. And I said: what am I going to find? He said: its in a black bag. The dope is in a black bag."
T. 73-74.
Det. Abel opened the passenger side door and felt underneath the dash. He pulled out a black velvet bag and emptied the contents of the bag on the hood by the car. BCI analysis confirmed the substances in the bag were heroin and crack cocaine.
On August 16, 2000, appellant was indicted with one count of possession of crack cocaine, in violation of R.C. 2925.11(C)(4)(e), a felony of the first degree, and one count of possession of heroin, in violation of R.C. 2925.11(C)(6)(d), a felony of the second degree.
On September 5, 2000, appellee filed a Motion to Suppress Evidence seized from the warrantless search and seizure. The trial court conducted an evidentiary suppression hearing on November 22, 2000.
In a December 1, 2000 Judgment Entry, the trial court granted appellee's motion to suppress all evidence seized from the vehicle. In a December 5, 2000 "Judgment Entry (Nunc Pro Tunc)" the trial court granted appellee's motion to suppress statements made at the scene of the arrest. It is from these Judgment Entries appellant prosecutes its appeal, assigning the following as error:
 I. THE TRIAL COURT'S DECISION GRANTING APPELLEE'S MOTION TO SUPPRESS EVIDENCE/DRUGS FOUND IN APPELLEE'S VEHICLE WAS CONTRARY [SIC] TO LAW AND AN ABUSE OF DISCRETION.
 II. THE TRIAL COURT'S DECISION GRANTING APPELLEE'S MOTION TO SUPPRESS STATEMENTS MADE BY APPELLEE SHORTLY AFTER HE WAS GIVEN HIS MIRANDA RIGHTS WAS CONTRARY [SIC] TO LAW AND AN ABUSE OF DISCRETION.
 I
In appellant's first assignment of error, it maintains the trial court's decision to grant appellee's motion to suppress evidence was contrary to law and an abuse of discretion. We agree it was contrary to law.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and Statev. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
The trial court concluded it was proper to suppress the contraband evidence seized from appellee's vehicle because it found the police failed to secure a warrant prior to the search and because appellee did not voluntarily consent to a search. The trial court noted no reasonable grounds had been established by the State for not obtaining a search warrant based upon clear probable cause before the July 23, 2000 arrest. The trial court concluded, as a matter of law, based upon the totality of the circumstances, appellant had not met its burden of proof to establish appellee's voluntary consent to search the vehicle in which the drugs were found. Appellant maintains as long as probable cause existed to believe appellee's vehicle contained contraband, it was irrelevant whether the police had time to secure a warrant prior to conducting a search of the vehicle.
The well-established automobile exception to the warrant requirement allows police to conduct a warrantless search of a vehicle if there is probable cause to believe the vehicle contains contraband or other evidence subject to seizure, and exigent circumstances necessitate a search or seizure. State v. Mills (1992), 62 Ohio St.3d 357, 367. "The mobility of automobiles often create exigent circumstances, and is the traditional justification for this exception to the fourth amendment's warrant requirement." Id., citing California v. Carney (1985),471 U.S. 386, 391. Under the automobile exception, if probable cause exists to conduct a search of a vehicle, no other exigency or special circumstance is required to obviate the need for a warrant. See, Marylandv. Dyson (1999), 527 U.S. 465.
Police need not have a reasonable suspicion of drug related activity prior to subjecting an otherwise lawfully detained vehicle to a canine sniff. State v. Rusnak (1997), 120 Ohio App.3d 24, 28. The exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the fourth amendment to the constitution.Id.; United States v. Place(1983), 462 U.S. 696. However, probable cause arises if a drug dog alerts to a certain area of the vehicle. State v.Cicora (Jul. 31, 2000), Stark App. No. 2000CA43, unreported.
In the matter sub judice, the informant had provided correct information to the police of appellee's physical description, the vehicle description, and the location, time and date of appellee's arrival. However, because the police had never used this informant in the past, Mr. Delp had no record of reliability. Each of the details the police could and did corroborate up until that point were neutral details not necessarily indicative of appellee's involvement in criminal activity. However we find probable cause existed when Lt. Milam heard appellee say "Mike, you set me up. I'm going to fucking kill you." This statement provided the police with corroboration of a non-neutral detail, indicating appellee's involvement in a drug deal.
Further, we find the positive indication by the drug dog gave the police probable cause to search the vehicle under the automobile exception. Under these circumstances, the police were not required to obtain either a search warrant or appellee's consent.
Accordingly, we find the trial court erred in suppressing the evidence obtained from the search of appellee's vehicle.
Appellant's first assignment of error is sustained.
 II
In appellant's second assignment of error, it maintains the trial court erred in suppressing statements appellee made at the scene of the arrest. We disagree.
In determining whether a confession is voluntary, the trial court should consider the totality of the circumstances. State v. Barker
(1978), 53 Ohio St.2d 135. "A suspect's decision to waive his privilege against self incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Otte (1996),74 Ohio St.3d 555.
The question of voluntariness of a confession is an issue of law, and an appellate court should review the facts to make its own determination of the issue. Arizona v. Fulminate (1991), 499 U.S. 279. However, the burden rests with the prosecution to demonstrate a "knowing, intelligent, and voluntary" waiver based upon the totality of the circumstances surrounding the entire interrogation. State v. Paladin
(1988), 48 Ohio App.3d 16. A defendant's age, mentality, prior criminal history, "the length, intensity, and frequency of the interrogation, the existence of physical deprivation or mistreatment; and the existence of threat or inducement" all should be considered in determining whether a confession is involuntary. State v. Edwards (1976), 49 Ohio St.2d 31, syllabus, par. 2.
At the suppression hearing, appellee testified he did not understand and did not waive the Miranda rights recited to him in English by Det. Abel. At the time Det. Abel read appellee his rights, Det. Abel had his knee in appellee's back and various members of the SWAT team had automatic weapons aimed at appellee's head. Appellee also testified Spanish was his primary language.
In its December 5, 2000 Judgment Entry, the trial court found:
 * * * the Court specifically concluding that the Defendant (who was "given his rights" while handcuffed, lying on his stomach, having just been removed by a SWAT team from his vehicle, then being held in the presence of officers while a drug dog sniffed, and with a limited ability to understand English) could [not] be determined to have willingly, voluntarily and knowingly waived rights.
We conclude, as did the trial court, the State failed to meet its burden to show appellee voluntarily, intelligently, and knowingly waived his rights under the totality of the circumstances. Accordingly, we find no error in the trial court's decision to suppress the statements made at the scene.[1]
Appellant's second assignment of error is overruled.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the December 1, 2000 Judgment Entry of the Guernsey County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings consistent with our opinion and the law. The December 5, 2000 Judgment Entry of the Guernsey County Court of Common Pleas is affirmed. Costs divided equally.
Hoffman, J. Boggins, J. concur. Gwin, P.J. concurs in part, dissents in part.
[1] The only statements at issue in the motion to suppress were thoseobtained by police at the scene. While we affirm the trial court's grant of the suppression of "statements allegedly being made by the Defendant at the scene of the arrest," we note appellant made at least one statement at the scene which was not in response to police interrogation. Specifically, the comment overheard by Lt. Milam while appellant was still talking on a cell phone is not suppressed because it was not "obtained" by the police.